**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JR a Minor, by his mother and father**    * | |
| **EAR and TMR**    * | |
| **Plaintiffs**    * | |
| **v.**    * | |
|    * | |
| **PIKE COUNTY BOARD OF**    * | |
| **EDUCATION,**    * | |
| **SAMUEL MARK BAZZELL**    * | |
| **Individually and in his official capacity**    * | |
| **as Superintendent of Schools;**    * | |
| **TERRY CASEY, individually and in**    * | |
| **his official capacity as Principal**    * | |
| **Of Pike County High School,**    * | **Case No. CV 2:06-cv-1120-MEF** |
| **BUDDY PYRON, individually and in**    * | |
| **his official capacity as**    * | |
| **Principal of Pike County High School,**    * | |
| **ROBERT MCDANIEL, individually**    * | |
| **and in his official capacity as Assistant/**    * | |
| **Principal of   Pike County High School;**    * | |
| **CHARLES LESLIE COON, individually**    * | |
| **and in his official capacity as a teacher**    * | |
| **at Pike County High School**    * | |
| **DOE DEFENDANTS 1-5 being those**    * | |
| **persons legally responsible for providing**    * | |
| **for the safety of special education**    * | |
| **students and for conducting**    * | |
| **investigations of complaints**    * | |
| **relating to the physycial safety of**    * | |
| **students and for establishing policies**    * | |
| **and procedures to protect said students.**    * | |
| **Defendants**    * | |

**APPLICATION FOR ENTRY OF DEFAULT JUDGMENT**

      Comes now J.R., a minor et al by and through his attorneys of record,    and pursuant to F. R. Civ. P. 55(b)(2), moves the Court for entry of a default Judgment against the defendant Charles Leslie Coon for compensatory and punitive damages and attorneys fees and expenses as set forth hereinafter. As grounds for said motion the undersigned would show unto the Court the following:

1.  The defendant was served with the summons and complaint on January 8, 2007.

2. Thereafter he failed to appear or otherwise defend this action and an entry of default was made by the Clerk of the Court on March 12, 2007.

3.  Plaintiff now seeks the entry of a final judgment against defendant Charles Leslie Coon pursuant to F. R. Civ. P. 55(b)(2) on the following evidentiary submissions:[1]

XA      Deposition of Andrew Wright

XB      Deposition of  Karen Berry

XC      Deposition of Mona Watson

XD      Testimony of AR,  the mother of JR[2]

XE       Time & expense records for Susan Shirock DePaola

XF      Time & expense records for  Deanie Clark Allen

XG      Affidavit of James Sears

Exhibits to Deposition:  Defendants Exhibit 5, Plaintiff's Exhibits 19, 26, 27 & 28

**Evidentiary Submission:**

The Plaintiff  in this case, "JR,"   was at the time of the incident a 15 year old special education student described as having "mild to moderate" mental retardation with a full scale IQ of 53 placing him in the first percentile  with respect to intellectual functioning.  (XB  P 13  LL 11 ?  P 14 L 16).  An individual with mental retardation has limitations on intellectual development and limitations on adaptive skills.  (XB    P 11 L 14 ?   P 12 L 1). JR also has deficits in the  area of oral expression scoring in the first percentile  on the Oral and Written Language Scales yielding an age-equivalent score of 6

---

[1] A Motion to Allow the Filing of XA-XC and  Exhibits to Depositions  under seal is being filed concurrent herewith.

[2] This document has already been submitted to the Court under seal. (Docket  Entry 58)

years 11 months at a time when the student was fifteen years nine months.  .  (XB  P 15 L 16 ?    P 18 L 18).    A later  psychological report by Dr. Fernelle Warren,  done in February of 2007, indicates  the  student  has  poor  insight  and  judgment,    is  very susceptible to the influence of others and     may act without recognizing the potential consequences of his behavior.    (XA   P 172  LL 5?   P 173 L 3; DX 5[3]).  The evaluation indicates  the  student  views  the  world  in  an  overly  narrow  frame  of  reference,  lacks consistent coping skills,   and is much less willing than most people to approach and process emotional stimuli.    ( XA    P 176 L 22?   P 177 L 21; DX 5).    He is also described as "lacking Psychological complexity" which contributes significantly to his coping deficits (XA    P 177  L 22 ?     P 178   L 4)  and "gullible." (XA P 55 L 22 ?   P 56 L 1).

JR was a client at East Central Alabama Mental Health  prior to the incidents of sexual abuse for episodes of Oppositional Defiant Disorder and for  Attention Deficit Disorder and was readmitted for services following the sexual abuse after being out of services for several years.  (XA P 114  L 19 ?   P 117  L23).

Counseling is currently being provided to the student  by Andrew Wright.  Mr. Wright is employed by East Central Alabama Mental Health and has a BS in Criminal Justice and psychology and a Master's degree in clinical psychology.  He has worked as a therapist since 1990 and is a Licensed professional counselor with the State of Alabama. (XA   P6 L 21   ?    P7  L 19).    Mr. Wright began working with JR  in February of 2007 as a result of a call from Mona Watson of the Child Advocacy center who reported the sexual abuse to him and indicated the student was in a crisis situation.   (XA P 28 L 10 ? P 29 L 12;   XA P 8 L 18 ?   P 11 L 14; XA P28 L 10 ?   P 29 L 10).  This crisis resulted

---

[3] Only a portion of Defendant's Exhibit 5 is being submitted because it is voluminous.

in a referral to a local psychiatrist Dr. Lopez (PX 27) and attempts were made to manage his anxiety, depression and aggression with medications. (XA P 29 L 14? 18).

Mr. Wright has diagnosed JR as having Post-Traumatic Stress Disorder associated with the sexual abuse to which he was subjected in 2004-2005. (XA P 11 L. 18 ? P. 12 L. 7; P. 12 L 8 ? P. 13 L 22; PX 28). PTSD is described by Mr. Wright as an anxiety disorder in which " . . . a person has recurring thoughts, emotions, feelings, about a trauma experience, or an adverse—aversive type stimulus situation." ( XA P 141 L 6? 14).

JR also has a diagnosis of "major depressive disorder- severe with psychosis".(XA P 18 L 1? 23; XA P 102 L 16? P 103 L 7; PX 28, PX 26). The treating psychologist indicates that JR is at this time "severely emotionally disturbed." (XA P 32 L 13? 19). JR is described as "extremely depressed and the treating psychologist feels that this is "exacerbated by the Post-Traumatic Stress Disorder" (XA P 44 L 13? 22).

A second major behavioral incident in April of 2007 resulted in an involuntary commitment to the UAB psychiatric hospital. (XA P 61 L 16 ? P 64 L 18; PX 26).

Mr. Wright testified that currently JR is unable to discuss the abuse. (XA P 15 L 5? P 16 L 3). Wright describes JR's reaction to any inquiry relating to the abuse as "dissociative" behavior; (XA P 6 L 4? 15) that is, he would not talk or make eye contact when the subject of sexual abuse was broached. It is apparently painful and traumatic for JR to attempt to discuss these events. (XA P 162 L 6? 14). Thus, the only forensic interview of JR was conducted in July of 2005 by Mona Watson with the Child Advocacy Center in Troy. ( XC P 31 L 16? P 32 L4; XC P 38 L 14? P 39 L 8; PX 19). During the interview, JR reported incident(s) of sexual abuse which occurred at

4

the school. This interview occurred at or around the time Mr. Coon was arrested in the summer of 2005. (PX 19).

The plaintiff acknowledges that there are no measurable physical symptoms of JR's injury other than loss of appetite and sleeplessness and this is confirmed by the psychologist.(XA    P 155 L 1? 5).   Despite that fact, it is clear that there is psychological injury (XA P 169 L 6?   P 170    L 10).   That injury manifests itself as extreme anger (XA  P 13 L 8) and as severe depression (XA  P 13 L 9). The student also exhibits shame  (XA  P 15 L 9; XA P 16 L 2; XA P 101 L 13 ?  23) and humiliation (XA P 15 L 8; XA P 102 L 5?  7), guilt  (XA P 116 L 21?  P 117  L 11) and sleep disturbance (XA  P 21  L 4) .  All of the above are apparently complicated by his mental retardation diagnosis which affects his ability to articulate his feelings.  (XA  P 15  L  5?  15).

Upon referral by Mr. Wright, JR was evaluated by Dr. Fernelle Warren who reported the student was experiencing visual hallucinations, aggression toward others, eating non-food items, hearing sounds that were not there and, as a critical item, was in danger of causing harm to himself or others.   (XA P 41  L  16 ?    P 44  L 22: DX 5).

With respect to a prognosis,  Wright indicates that the student needs continuing counseling and medications.  (XA P 19 L 1 ?    P 22 L 5).  Following an emergency in-patient hospitalization at UAB in April 2007 ,  the student was discharged on Lexapro to help address the PTSD  ( PX 26).  .

The injury to JR, sustained as a result of the sexual abuse,  is described as "engraved in the memory (XA P 170 L 2?  10)  and the medications are simply helping to alleviate the symptoms of his disorder. (XA P 170 L 12 ?   16;  XA P 172  L 2? 4).   He will need

ongoing medication and treatment because the injury is not a "short-term thing."    (XA P 181 L 19 ?  P 182  L 23).

There is a consensus among treating professionals that because of his intellectual deficits,  that JR will have an extremely difficult time dealing with the sexual abuse trauma. (XA P 181 L 13 ?  P 182 L 7).  Although JR had been a client at East Central Alabama Mental Health prior to the sexual abuse, diagnosis was "Oppositional Defiant Disorder" and Attention Disorder. (XA  P  151  L  1?  5)   The behavioral incidents experienced at that time were different in degree and type from the problems experienced following the sexual abuse.  (XA  P 9 L 14?  19;  XA P 44 L 23?  P45 L10; XA P 45 L 11?  16; XA P 149 L11?  18; XA P 150 L1?  19).

The mother of JR   testified at the hearing[4] on the motion for entry of default judgment as to his emotional condition and how it differed before and after the incidents of sexual abuse.  Specifically,  she testified that he was experiencing social isolation. (XD P13  L22?  P 14 L 6).  She confirmed, in her own words,  the dissociative behavior ("shuts down") described by the psychologist. (XD P.14 L 11?  18; P 22 L 16?  24).  She also confirmed that JR had been out of counseling for several years prior to the sexual abuse and that he had been required to see a counselor or other professionals  since the sexual abuse including a hospitalization at UAB at Spain Psychiatric Ward as ordered by the Court following an outbreak of violent behavior. (XD P 18 LL 5?  22).  The mother confirmed that JR's aggressive or violent behavior was different in kind from any behavior that had been exhibited prior to the sexual abuse.   (P20 L2?  13).  These

---

[4] The mother testified on October 31, 2007 in open court.  The transcript of this proceeding has been filed under seal and will not be filed with this renewed motion.

behaviors included hitting walls, throwing tantrums and just getting   "violent with himself." (XD P20 L 21?  24).

The mother reported some avoidance of males (XD P20 L14?  20) and some loss of sleep and appetite. (XD P20 L25? P21 L11).   The student is on medication for depression after the incidents. (XD P21 L12 ?   P 22 L2).  The mother also confirmed the loss of self-esteem as a result of these incidents (XD P 22 L3?  10) and a refusal to participate in school activities that he had engaged in prior to these incidents. (XD P22 L 25 ?  P23 L 5).

**Damages**

The injury to JR is, in the opinion of the undersigned, almost immeasurable.  The Plaintiff is unable to demonstrate any "out of pocket" losses but 42 U.S.C. §1983 also clearly allows recovery for the mental anguish and personal suffering caused by the Defendant's conduct.  *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974). It is difficult to conceive of an amount of money that would compensate for the degradation, humiliation, guilt and anger that this young man is experiencing.  It is also clear that his limited mental capacity complicates therapy and that he is simply being managed on medications. It would be impossible to conclude that there is no injury or damage.

We believe that the Court can quantify that  by looking at the  age (15) at date of injury, his life expectancy of 60.20[5] years  and compensating him for each day in which he must live with this injury.  It would not appear unreasonable to compensate him $20

---

[5] Social Security Actuarial Publications: http://www.ssa.gov/OACT/STATS/table4c6.html. (Exhibit E).

7

per day for the injury which will last for the rest of his life for total compensatory damages of $439,460.00. Moreover, the plaintiff is entitled to punitive damages for this intentional violation of his rights and it would not be unreasonable to award punitive damages of $878,920.00 which is two times the compensatory amount.

**Attorneys Fees**

Further, the plaintiff is entitled to recover attorneys fees and court costs pursuant to 42 U.S.C. §1988. The statute allows for "reasonable " attorneys fees based on the time, nature, extent and value of the services and the cost of comparable services and for reimbursement for actual, necessary expenses incurred by such an attorney.

The Courts use the twelve Johnson factors to determine a reasonable fee for professional services. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill required to properly perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship between with the client; and (12) awards in similar cases. The Johnson v. Georgia Highway Express factors are analyzed hereinafter.


Time, Labor and Expenses Required. Exhibit E constitutes a detailed itemization of time billed for services rendered by Susan Shirock DePaola; Exhibit F constitutes a detailed

itemization of time billed for services rendered by Deanie M. Allen. .  The undersigned completed the time records contemporaneously with the rendition of the services described. The time charges for each were reasonable and  necessary as to the case as a whole and the undersigned petition the Court to enter a judgment for fees against Defendant Coon to the extent that the Court determines they were necessary to render a judgment against him and to prepare the case generally.   Although a default was ultimately taken against Defendant Coon all services to that date were required to investigate this matter, to prepare and file the complaint, interrogatories and requests for production, to prove damages and otherwise to prepare the case for trial.   The actual and necessary expenses incurred by counsel are also set forth in detail in Exhibits E  and F. The time and expenses of counsel are commensurate with the complexity of the  case as it relates to the legal and factual issues involved. The undersigned have made every effort to avoid any unnecessary duplication of time, services and expenses.

The Novelty and Difficulty of Questions Presented by the Case. The legal questions involved in a case relating to sexual abuse of a minor are complex and difficult. The attorneys for the plaintiff drafted and filed a complaint which was legally sufficient and detailed and which accurately reflected available legal remedies.   Only one amendment to the complaint has been required and that amendment arose out of the need to seek additional relief in the form of mandatory injunctive relief which was also allowable under applicable statutes.

Skill Requisite to Perform the Legal Services Properly. The matters and issues requiring the   attention of the undersigned, as described above, have required considerable knowledge of civil rights and disability law   and substantial investigation of facts. The

intersection of disability law and civil rights law,  as well as the complex question of immunity and applicable defenses make this an area of practice requiring great skill and sensitivity.

Customary Fees for Similar Work in the Community. The fees for services rendered by the undersigned  lawyers are customary and usual in the  legal community in which the undersigned practice and the Middle District of Alabama. The hourly rates set forth in Exhibits E & F  attached hereto, are those customarily charged to the undersigneds' similarly situated  clients for similar legal services. Moreover, the undersigneds' rates compare favorably to the rates in the legal community in which this Court is located.  The attached Exhibit G is an affidavit of  James Sears in support of said rates and charges.

Contingent Nature of Fees. The undersigneds' fees are contingent and the plaintiffs are demonstrably unable to pay the fees and expenses  required to prosecute this action.

Amount Involved and Results Obtained. The undersigned believe that the fees are reasonable based upon the fact that they have secured a default judgment against this defendant.   The court will determine the "amount involved" in ruling on this motion and can address this factor in conjunction with that determination.

Time Limitations Imposed by the Circumstances. This case has occupied a large portion of the time of the undersigned attorneys and has limited  them from accepting other cases during the past twelve months.

 Experience, Reputation, and Ability of Attorneys. The private   practice of the undersigned attorneys has been largely limited to disability advocacy and special education law.  Both attorneys have educational and legal backgrounds in this area and they are amongst approximately 10 lawyers in the state of Alabama with the background

and experience necessary to integrate all of the legal issues which have arisen in this case.

<u>Undesirability of the Case</u>   The undersigned believe that this case is largely undesirable to the extent that the plaintiff is unable to pay fees and expenses on an ongoing basis and the undersigned face daunting legal and factual challenges in this case.

<u>Nature and Length of the Professional Relationship with the Client</u>. Deanie Allen has represented the minor plaintiff for  two years including representation to resolve educational issues which arose as a result of this experience.  Susan Shirock DePaola has had a shorter professional relationship with the client and was associated at the time of the filing of the Federal Court complaint.

<u>Awards in Similar Cases</u>. The fees and expenses requested appear to be commensurate with other similar cases.

**Request for Entry of Final Judgment**

Wherefore the premises considered,  the Plaintiff requests that the Court enter judgment in favor of the Plaintiff and against defendant Coon in the amount of $439,460.00 in compensatory damages,   $878,920.00 in punitive damages; and further that the Court award fees to Susan Shirock DePaola in the amount of $41,550.00 nd expenses in the amount of  6,260.57  and fees to Deanie M. Allen in the amount of $34,360.00 and expenses in the amount of $4,128.02.

Respectfully submitted on this the 23rd day of January, 2008.


/s/   Susan Shirock DePaola
ASB:  7431-L75S

**Susan Shirock DePaola**
**1726 West Second Street~Suite B**

11

**Montgomery, AL 36106**
specialeducationattorney@mindspring.com


                                           /s/   Deanie Clark Allen
                                           ASB:  1662-G69A


**Deanie Clark Allen**
**Aliant Center**
**2740 Zelda Road, Fourth Floor**
**Montgomery, AL 36106**
dallen@azarlaw.com


## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Application for Entry of Default has been served on  the following by ECF or  by  first class mail, postage prepaid and deposited in a United States mailbox located in Montgomery, Alabama, on  this the 23rd   day of January, 2008.

      VIA US MAIL:
      Charles Coon
      308 Country Club Drive
      Greenville, AL  36037




      VIA  ECF
      Donald Sweeney
      (for all remaining Defendants)

                                           s/  Susan Shirock DePaola

XE Susan Shirock DePaola

JR. v. Pike County Board of Education  06→1120

Timesheet:  Susan DePaola

| DATE | ACTIVITY | TIME | |
|------|----------|------|---|
| 12.14.06 | Review documents provided by Deanie Allen (DA) Westlaw Research Meeting with DA | 1.6 .5 2.0 | |
| 12.15.06 | LR for drafting complaint and prepare first rough  draft | 3.0 | |
| 12.16.06 | LR re claims or causes of action | 2.0 | |
| 12.17.06 | Redraft complaint & review facts with DA | 3.5 | |
| 12.18.06 | Drafts 4,5, & 6 of complaint; PC R. Dean re status | 2.5 | |
| 12.21.06 | Letter to Parents R. Dean and DA | .3 | |
| 1.16.07 | Review/summarize Title IX Cases | 1.5 | |
| 1.17..07 | Meet with family in Troy and DHR representative including travel time | 7.0 | |
| 1.19.07 | Review of Federal Title IX regulations; type all notes from meeting in Troy; PC D. Sweeney; letter to family and e→mail and letters to co→counsel and referring attorney | 3.5 | |
| 1.20.07 | Review of 11th Cir. Title IX cases  and review status of Fed'l Regulations | 2.0 | |
| 1.22.07 | PC  parent re counseling; PC to school counselor | .1 | |
| 1.23.07 | PC parent re counselor and need for JR's consent to contact | .1 | |
| 1.25.07 | LR on "actual knowledge"standard | 1.4 | |
| 1.26.07 | Internet research re expert witness for sexual abuse and MR; review of Davis article "People with MR and Sexual Abuse" | .9 | |
| 1.28.07 | R. of SIECUS Annotated Bilbliography; ARC's Justice Advocacy Guide and Shaeshaft Synthesis of Existing Literature prepared for OSEP | 2.2 | |
| 1.29.07 | PC with potential experts | .8 | |
| 1.30.07 | Continue work to identify expert | 1.3 | |
| 2.5.07 | Meeting in Troy with family including travel | 5.0 | |
| 2.8.07 | Draft/file application for entry of default judgment; continue research with National Child Advocacy Center | 1.1 | |

JR. v. Pike County Board of Education  06→1120

Timesheet:  Susan DePaola

| | | | |
|---|---|---|---|
| 2.22.07 | Begin work on interrogatories and RFP to Board | 1.0 | |
| 2.26.07 | LR re discovery of criminal investigative matters; PC to Attorney General's office; work on response to Motion to Quash and/or consent protective order | 1.7 | |
| 2.28.07 | Work on interrogatories and RFP; review documents produced by Pike County | 4.0 | |
| 3.2.07 | Talk with AG's office re motion to quash, preview of file from administrative proceeding | 1.2 | |
| 3.8.07 | Prepare & file proposed protective order, consult with atty for BF and AG's office | 1.1 | |
| 3.20.07 | Work on draft report of parties planning meeting; letter to witness1 | 1.0 | |
| 3.26.07 | Meeting with D. Sweeney & DA; Rule 26 Planning meeting | 1.0 | |
| 4.12.07 | Meeting with DA re initial disclosures | 1.5 | |
| 4.30.07 | Meeting with DA | 1.0 | |
| 5.8.07 | Response to motion to quash and letter to D. Sweeney re depositions | .5 | |
| 6.6.07 | Amend complaint | 1.1 | |
| 6.13.07 | Review letter from D. Sweeney; draft/send response Meeting with M.Crow re sexual abuse case | .4 1.5 | |
| 6.15.07 | Meeting with parents to prepare for deposition | 2.5 | |
| 6.16.07 | Contact with potential expert | 1.2 | |
| 7.20.07 | Attend depositions in Pike county | 7.8 | |
| 7.22.07 | Deposition preparation | 4.5 | |
| 7.24.07 | Depositions in Pike County | 8.0 | |
| 7.25.07 | Depositions in Pike County | 8.0 | |
| 8.9.07 | Review of DA's letter to D. Sweeney and cases | 1.0 | |
| 8.21.07 | Certification prepared for Pike county Circuit Clerk; Review of NOD's and work on protective order with DHR | 1.8 | |
| 8.22.07 | LR re "individual liability" in response to D. Sweeney's letter | 1.2 | |
| 8.31.07 | Meeting with DA to discuss additional discovery | 1.0 | |

JR. v. Pike County Board of Education 06→1120

Timesheet: Susan DePaola

| | | |
|---|---|---|
| 9.3.07 | Deposition preparation | 1.0 |
| 9.4.07 | Depositions in Pike county | 6.0 |
| 9.6.07 | Meeting with Lucai Grantham | 1.5 |
| 9.10.07 | Westlaw research re 26© motion for protective order | 1.4 |
| 9.12.07 | Draft letter to D. Sweeney re deposition and draft protective order | 2.0 |
| 10.1.07 | Deposition preparation | 2.1 |
| 10.2.07 | Attend depositions in Troy | 8.0 |
| 10.3.07 | Begin summary of Bazzell deposition | 1.0 |
| 10.4.07 | Meeting in Daphne with expert including travel time | 7.0 |
| 10.18.07 | Depositions in Troy | 4.0 |
| 10.25.07 | Trip to Greenville to review Probate Court records | 2.0 |
| 10.29.07 | Review of expert report and draft plaintiff's disclosures | 2.1 |
| 10.31.07 | Meeting with client re default hearing; attend hearing and present testimony | 1.8 |
| 12.26.07 | Work on renewed Motion for Default Judgment | 4.0 |
| 12.27.07 | Work on default | 3.5 |
| 1.4.08 | Work on Default and forward to DA for review; PC D. Allen | 2.0 |
| 1.20.08 | Trip to Daphne for meeting with expert & client | 6.5 |
| 1.21.08 | Attend Deposition of Expert including travel time | 8.0 |
| 1.22.08 | Completely review motion for default judgment including all transcript references, organize exhibits for submission; finalize bill and expenses for submission | 6.0 |
| | Total Time: | 166.2 |
| | **Total Fee: 166.2 @ $250/hour** | 41,550.00 |

JR v. Pike County    CV  06-1120

Susan Shirock DePaola

| DATE | Expense Description | Cost | |
|------|---------------------|------|---|
| 2.9.07 | Subpoena Expenses | 222.48 | |
| 3.4.07 | Westlaw | 135.00 | |
| 4.16.07 | PACER Expense | 13.76 | |
| 7.19.07 | Deposition Expense | 1996.20 | |
| 7.26.07 | PACER Expense | 20.88 | |
| 8.2.07 | Pike County Circuit Clerk | 15.50 | |
| 9.6.07 | Expert Witness | 1500.00 | |
| 9.10.07 | Probate Court Costs | 5.00 | |
| 9.13.07 | Federal Express to Witness | 31.49 | |
| 10.27.07 | Medical Records Exepnse | 9.77 | |
| 10.29.07 | Expert Witness | 1500.00 | |
| 10.30.07 | PACER | 11.12 | |
| 11.3.07 | Medical Records | 26.48 | |
| 12.3.07 | Deposition Expense | 646.00 | |
| 12.10.07 | UPS to Witness | 6.44 | |
| 1.10.08 | Patricia Starkie Transcript of testimony of AR on default | 120.45 | |
| | **Total Expenses:** | 6,260.57 | |
| | | | |
| | | | |
| | | | |

## JR v. Pike County   CV 06-1120
## Timesheet:    Deanie C. Allen

| DATE | ACTION | TIME | |
|------|--------|------|------|
| 07-24-05 | Case opened/Met w/Clients | | 4.0 |
| 11-06-06 | Email Corresp w/Mom (AR) | | 0.2 |
| 11-07-06 | 2 Telecons (TC) w/AR | 0.2 | |
| 11-13-06 | Email Corresp w/AR | | 0.2 |
| 11-21-06 | Review notes from HO re pursuing fed. ct | | 0.4 |
| 11-27-06 | TC w/Referring Atty Richard Dean (RD) | | 0.1 |
| | Meeting w/RD | 1.0 | |
| | TC w/AR | | 0.2 |
| 11-28-06 | TC w/AR | | 0.2 |
| 12-01-06 | Review and summarize notes from RD | 1.3 | |
| 12-04-06 | Review/Transcribe tape of initial interview w/JR & family | 3.6 | |
| 12-05-06 | TC w/AR re proposed affidavit of sibling | | 0.2 |
| | Email corresp w/AR re meeting Thurs | 0.2 | |
| 12-09-06 | TC w/Atty Susan DePaola (SD) re association on case | 0.2 | |
| 12-11-06 | TC w/AR re affidavit | | 0.2 |
| | Draft/Revise case summary/notes | | 0.1 |
| | TC w/SD re meeting | | 0.1 |
| 12-14-06 | Meeting w/SD to discuss case | 2.0 | |
| 12-15-06 | Case prep/Summarize/Review Conversations/Research | 5.0 | |
| | Email Corresp w/SD | | 0.1 |
| 12-17-06 | Meeting w/SD | | |
| 12-18-06 | TC w/SD | | 0.1 |
| | LR. 1983 claim | 1.5 | |

|  |  |  |  |
|---|---|---|---|
|  | TC w/AR |  | 0.1 |
| 12-18-06 continued | Review/Revise Complaint |  | 2.0 |
|  | Research damages |  | 1.3 |
|  | TC w/SD |  | 0.1 |
|  | Review final draft of Complaint | 0.4 |  |
|  | TC w/SD |  | 0.1 |
|  | 3 Email corresp w/SD | 0.3 |  |
|  | Efile     (Problems w/system) |  | 1.5 |
| 12-20-06 | TC w/AR |  | 0.2 |
|  | Email corresp w/SD |  | 0.1 |
| 01-02-07 | LR case law on pt |  | 0.5 |
| 01-08-07 | TC w/AR |  | 0.2 |
| 01-11-07 | TC w/Mona Watson-Pike Co Child Protect |  | 0.1 |
|  | 2 TC w/AR |  | 0.2 |
|  | TC w/ Sherry Shackleford-PCHS Resource Officer |  | 0.1 |
|  | Email corresp w/SD |  | 0.1 |
| 01-12-07 | 2 Email corresp w/SD | 0.2 |  |
|  | TC w/AR |  |  |
| 01-17-07 | Meeting w/M. Watson & family in Troy |  | 7.0 |
|  | Including travel time |  |  |
| 01-23-07 | TC w/AR |  | 0.2 |
|  | Legal Research | 0.8 |  |
|  | Email corresp w/SD |  | 0.2 |
| 01-29-07 | TC w/SD |  | 0.1 |
|  | TC w/AR |  | 0.1 |
| 01-31-07 | TC w/AR |  | 0.1 |
| 02-02-07 | TC w/AR |  | 0.2 |
|  | TC w/SD |  | 0.2 |
|  | TC w/Dr. Karl Kirkland re expert |  | 0.2 |
| 02-05-07 | TC w/AR |  | 0.2 |
|  | Email corresp w/SD |  | 0.1 |
|  | Trip to Troy to talk to family |  | 5.8 |
|  | Including travel time |  |  |

| | | | |
|---|---|---|---|
| 03-05-07 | 3 TC wAR | | 0.3 |
| | TC w/Witness Polly King | | 0.5 |
| 03-13-07 | Draft/Revise Letters re 3rd party subpoenas | | 2.0 |
| 03-21-07 | TC w/SD | | 0.1 |
| 03-22-07 | Email corresp w/SD | | 0.1 |
| 03-23-07 | Email corresp w/SD | | 0.1 |
| | TC w/SD | | 0.1 |
| | TC w/Officer Randy Courtney-Greenville PD | 0.1 | |
| 03-26-07 | TC w/Officer R.Courtney | | 0.2 |
| | TC w/City Atty Richard Hartley | | 0.1 |
| | TC w/SD | | 0.1 |
| | Rule 26 Meeting w/SD & D. Sweeney | 1.0 | |
| 03-28-07 | 5 TC to witnesses to followup on subpoenas | | 1.8 |
| 03-29-07 | Email corresp w/AR | | 0.1 |
| | TC w/AR | | 0.2 |
| 04-09-07 | Draft/Revise subpoenas | | 1.0 |
| 04-10-07 | Prepare for depos/draft/revise depo & RFP questions | 3.0 | |
| 04-11-07 | Draft/revise disclosure letter/subpoenas | 2.2 | |
| 04-12-07 | Meeting w/SD re initial disclosures | | 1.5 |
| 04-23-07 | 3 Email corresp w/SD | 0.3 | |
| 04-30-07 | Meeting w/SD | 1.0 | |
| 05-03-07 | Draft/ Revise subpoenas & research Def.employment | 2.0 | |
| 05-21-07 | TC w/SD | | 0.1 |
| 05-23-07 | Email corresp w/SD re depos | | 0.1 |
| 05-24-07 | 2 Email corresp w/AR | 0.2 | |
| | Email corresp w/D. Sweeney | | 0.2 |
| 05-25-07 | TC w/AR | | 0.2 |
| | Email corresp w/SD | | 0.1 |

| | | | |
|---|---|---|---|
| 05-31-07 | TC w/subpoena servers/meet | | 0.4 |
| 06-01-07 | Draft/Revise depo notices | | 1.0 |
| | Email corresp w/D. Sweeney office | | 0.1 |
| 06-01-07 continued | TC w/SD | | 0.2 |
| 06-29-07 | Fax/Mail PL 1st RFP & Interrog | | 0.5 |
| 07-03-07 | TC w/D. Sweeney office | | 0.1 |
| 07-10-07 | TC w/AR | | 0.1 |
| 07-11-07 | Review Def. Response to Interrog | | 1.0 |
| 07-12-07 | Review Discovery Production | 1.0 | |
| 07-13-07 | Meeting w/SD & Atty Mike Crow | | 1.5 |
| 07-15-07 | Meeting w/parents to prepare for depo | 2.5 | |
| 07-16-07 | TC w/SD | | 0.1 |
| | 2 Email corresp w/ D. Sweeney office | 0.2 | |
| | TC w/AR | | 0.1 |
| | Draft/Revise 3rd Party RFP to DHR & CP | | 1.0 |
| 07-18-07 | TC w/SD | | 0.1 |
| | TC w/AR | | 0.2 |
| | Fax Notes to D. Sweeney office | | 0.1 |
| | Email corresp w/Ct Reporter | | 0.1 |
| | Prepare for Depos | | 3.0 |
| 07-19-07 | Attend depos in Troy of P. King & parents | | 7.8* |
| | Including travel time | | |
| 07-20-07 | TC w/JR Counselor A. Wright | 0.1 | |
| | TC w/AR | | 0.1 |
| | Review Depo notes | | 1.0 |
| | Review Police discovery | | 1.0 |
| | Email corresp w/SD | | 0.1 |
| | Draft/Revise/fax subpoena to D. Sweeney office | | 0.4 |
| | Case Prep | | 1.0 |
| | Review case law | | 0.7 |

| | | | |
|---|---|---|---|
| 07-23-07 | Prepare for depos | | 0.8 |
| 07-24-07 | Attend depos in Troy including travel time | | 8.0* |
| 07-25-07 | Attend depos in Troy including travel time | | 8.0* |
| 08-20-07 | Review Case Law | | 0.6 |
| 08-21-07 | Research requests, draft, revise letter to D. Sweeney | 1.0 | |
| 08-22-07 | Continue letter to D. Sweeney/fax to SD | | 0.7 |
| 08-26-07 | Review depo of M. Bazzell/ck RFP | | 1.3 |
| 08-27-07 | Prepare questions for Sept 4 depo | | 1.5 |
| | TC w/M. Watson | | 0.2 |
| 08-29-07 | TC w/Laurie Shoemaker re expert | | 0.1 |
| 08-31-07 | Meeting w/SD | 1.0 | |
| | Prepare/fax additional discovery to D. Sweeney | | 2.0 |
| 09-02-07 | Preparation for depos | | 2.0 |
| 09-03-07 | Preparation for depos | | 1.6 |
| 09-04-07 | Attend depositions in Troy including travel time | 6.0* | |
| 09-06-07 | Meeting w/SD & Lucia Grantham | | 1.5 |
| | Draft/revise depo subpoena | | 0.5 |
| 09-11-07 | Prepare Pl discovery to produce | | 4.0 |
| 09-12-07 | Draft/revise/email/mail depo notices | | 1.0 |
| 09-13-07 | Copy/fax/deliver to SD | 0.5 | |
| 09-19-07 | TC w/atty Allen Jones | 0.2 | |
| | Draft/revise subpoena to R. Bradbury | 0.5 | |
| | Fax depo notice to D. Sweeney | | 0.1 |
| | TC w/subpoena server | 0.1 | |
| 09-20-07 | TC w/2nd subpoena server | | 0.2 |
| | 2 TC w/ D. Sweeney office | | 0.2 |
| | Email corresp w/L. Grantham | 0.1 | |

| Date | Description | | |
|------|-------------|---|---|
| 09-21-07 | Email corresp w/D. Sweeney office | | 0.1 |
| 09-24-07 | Prepare add. Pl discovery/fax to D. Sweeney | 0.3 | |
| 10-01-07 | Attend depo in Troy including travel time | | 8.0* |
| | Email corresp w/SD | | 0.1 |
| 10-09-07 | Draft/revise subpoena to R. Bradbury | 0.3 | |
| 10-17-07 | Preparation for depo | | 1.5 |
| | Email corresp w/ D. Sweeney office | | 0.1 |
| 10-18-07 | Attend depo in Troy including travel time | | 6.0* |
| 10-22-07 | 2 email corresp w/D. Sweeney office | 0.2 | |
| | Meeting w/SD | 0.5 | |
| 10-23-07 | Email corresp w/D. Sweeney office | | 0.1 |
| | TC w/SD | | 0.1 |
| 10-25-07 | Trip to Probate in Greenville | | 2.0 |
| 10-26-07 | Review expert's report | 0.5 | |
| | Email corresp w/SD | | 0.2 |
| | Email corresp w/ AR | | 0.1 |
| 11-20-07 | Continue depo in Troy including travel time | | 4.0 |
| 12-03-07 | Email corresp w/AR | | 0.1 |
| 12-04-07 | TC w/ AR | | 0.2 |
| 01-14-08 | TC w/AR | | 0.2 |
| 01-16-08 | Review application for DJ | | 0.8 |
| 01-18-08 | TC w/AR | | 0.1 |
| | Email corresp w/AR | | 0.1 |
| 01-20-08 | Trip to Daphne/Meeting w/expert & client | | 6.5 |
| 01-21-08 | Depo in Daphne including travel time | 6.0 | |
| 01-23-08 | Finalize billing/atty fees & costs | 2.0 | |

| | | |
|---|---|---|
| **TOTAL HOURS** | | 171.80 |
| **RATE** | | 200.00/Hr |
| **TOTAL FEES** | | 34,360.00 |

## EXPENSES

| DATE | DESCRIPTION | COST |
|---|---|---|
| 11-21-06 | Overnight to clients | 6.38 |
| 12-19-06 | Filing fee | 350.00 |
| 01-21-07 | Reagan Reporters | 523.00 |
| 04-24-07 | Subpoena expense | 279.60 |
| | Subpoena expense | 945.36 |
| 04-30-07 | Defendant records | 50.11 |
| | Defendant records | 19.00 |
| 06-01-07 | Subpoena expense | 129.72 |
| 06-05-07 | Defendant records | 23.15 |
| 07-23-07 | Subpoena expense | 147.52 |
| 08-03-07 | Subpoena expense | 209.52 |
| | Client expense | 100.00 |
| 09-12-07 | UPS Discovery | 26.91 |
| 09-14-07 | Deposition expense | 420.00 |
| 09-24-07 | Subpoena expense | 160.00 |
| 10-18-07 | Deposition expense | 356.50 |
| 11-16-07 | Deposition expense | 381.25 |

**TOTAL EXPENSES:**                4,128.02

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| JR a Minor, by his mother and father | * |
| EAR and TMR, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| PIKE COUNTY BOARD OF | * |
| EDUCATION, | * |
| SAMUEL MARK BAZZELL | * |
| Individually and in his official capacity | * |
| as Superintendent of Schools; | * |
| TERRY CASEY, individually and in | * |
| his official capacity as Principal | * |
| Of Pike County High School, | * Case No. CV 2:06-cv-1120-MEF |
| BUDDY PYRON, individually and in | * |
| his official capacity as | * |
| Principal of Pike County High School, | * |
| ROBERT MCDANIEL, individually | * |
| and in his official capacity as Assistant/ | * |
| Principal of Pike County High School; | * |
| CHARLES LESLIE COON, individually | * |
| and in his official capacity as a teacher | * |
| at Pike County High School | * |
| DOE DEFENDANTS 1-5 being those | * |
| persons legally responsible for providing | * |
| for the safety of special education | * |
| students and for conducting | * |
| investigations of complaints | * |
| relating to the physical safety of | * |
| students and for establishing policies | * |
| and procedures to protect said students, | * |
| | * |
| Defendants. | * |

1

## AFFIDAVIT OF JAMES D. SEARS

State Of Alabama     )
County of  Baldwin     )

Before me, a Notary Public in said County and said State, personally appeared  James D. Sears, who is known to me and who by me first being duly sworn, deposes and testifies as follows:

1.     This affidavit is executed in response to a request for information made to me by Susan Shirock DePaola and Deanie M. Allen, attorneys in Montgomery, Alabama.  I have personal knowledge of all of the facts and opinions expressed herein.

2.     I am a licensed and practicing attorney and a member in good standing of the Alabama State Bar.  I was admitted to the Alabama Bar in 1988 after my graduation from the University of Alabama School of Law.  I have 19 years of litigation experience in state and Federal courts focusing in the area of special education law and criminal law representing defendants who have diagnoses of mental retardation and/or mental illness.  I am a solo practitioner with the Sears Law Firm in Daphne, Alabama.  I am admitted to practice before the Federal District Court for the Southern District of Alabama, the Middle District of Alabama, and the Northern District of Alabama, as well as the United States Court of Appeals for the 11th Circuit and the federal district courts in Eastern District of Louisiana and the

2

Southern District of Mississippi. I have attached hereto a Curriculum Vita which details my training and areas of expertise.

3.    Throughout my legal career I have had primary responsibility for handling litigation relating to individuals with disabilities. This includes litigation under § 504 of the Rehabilitation Act of 1973, the Individuals with Disabilities Education Act, and various civil rights statutes. I am familiar with the rates charged for legal services in these areas of practice. I am also knowledgeable of Ms. DePaola's and Ms. Allen's experience, expertise, and reputation in handling matters such as the current claims or causes of action asserted on behalf of J. R., the minor plaintiff.

4.    I have examined pertinent documentation including the pleadings in this matter, the hourly time records summarized in plaintiff's itemization of time and the facts and opinions which are contained in this affidavit are based upon said examination and upon my experience in litigating similar federal statutory claims or causes of action.

5.    I am familiar with the factors identified by the Federal court in *Johneson vs. Georgia Highway Express, Inc.* 488 F.2d 715 (5th Cir.    1974) and therefore can comment on each as follows with respect to the current case.

    A.    <u>Desirability of the Case</u>: Due to the high degree of expertise required to litigate this case, it is my opinion that the matter is highly undesirable and it would be difficult to find attorneys with the required background in special education law and civil rights law to

3

effectively prosecute this action. I know of only a handful of other private practitioners, such as attorneys DePaola and Allen, who represent disabled individuals in state and federal court litigation. Moreover, the case is clearly a contingent fee case and therefore less desirable in general.

B.    Novelty and Difficulty of the Questions Presented: The legal issues which lead to plaintiff's entitlement to attorney's fees in this case are difficult particularly because of the interaction of disabilities law and civil law. There are few cases in this field which involve both of these areas and therefore the legal issues are clearly novel and difficult.

C.    Skill Required to Perform the Legal Services Properly: Both of the attorneys representing the plaintiff have an educational background as well as a legal background which puts them in a relatively unique position to assess and develop the issues presented in this case. The present case required an exertion of effort and skill much higher than that required in more routine legal matters. The skills necessary to perform services in this action, required both a thorough understanding of civil rights law as it relates to persons with disabilities and disability law generally. These skills are not normally gained through the general practice of law or through traditional legal training. This is a relatively obscure area of practice and requires an unusually high degree of skill and knowledge.

D.    Time and Labor Required:  I have examined the time sheets for both of the attorneys for the plaintiffs and find all of the services and expenses described there in as reasonable and necessary to prosecute this action. I have determined that the attorneys have worked diligently to avoid duplication of charges for services rendered even in those instances where both participated in depositions and other activities.

E.    Customary Fees: I believe that the rates of fees charged by Susan DePaola of $250.00 per hour and Deanie Allen  of $200.00 per hour, plaintiffs attorneys, are reasonable.   In my representation of disabled individuals I have charged fees for contingent and noncontingent work at a rate as high as $300.00 per hour.  Because of the risk in civil rights litigation, I often have to decline these cases. I

4

am also familiar with the hourly rates charged by Alabama trial attorneys for representation of clients in Federal court litigation involving both civil rights and education law.  The hourly rates of individual with competence or experience similar to plaintiff's attorneys, encompass the requested rate.  Finally, I am very familiar with attorney Susan Shirock DePaola  and I am familiar with Attorney Deanie  Allen and I feel that they exercise a great deal of competence in the area's civil rights of persons with disabilities.  It is my opinion that they have practiced billing discretion and good judgment in their expenditure of time and expense.

**JAMES D. SEARS**, Affiant

**SWORN TO AND SUBSCRIBED** before me on this the 21st day of January, 2008.

Notary Public

My Commission Expires: 4/28/10

# CURRICULUM VITA

JAMES D. SEARS
Sears Law Firm
816-A Manci Avenue
Daphne, Alabama 36526
(251) 621-3485; Fax 621-3486
Email: jdsears@searslawfirm.com

## EDUCATION

| 1988 | J.D. | The University of Alabama School of Law; Tuscaloosa, Alabama |
| 1975 | Ed.D. | University of Florida; Gainesville, Florida (Special Education/Mental Retardation; Minor - Research and Statistics). |
| 1971 | M.Ed. | University of Florida; Gainesville, Florida (Special Education/Mental Retardation). |
| 1968 | B.A. | University of South Florida; Tampa, Florida (Liberal Arts/History). |

## PROFESSIONAL EXPERIENCE

1995-Present

Private Practice, Attorney at Law; Southwest Alabama

Special Education Law--representing children with disabilities.

Criminal Law--representing defendants who have diagnoses of mental retardation and/or mental illness.

Fall, 1996

Adjunct Professor, Spring Hill College, Mobile, Alabama

1988-1994

Private Practice, Attorney at Law; Tuscaloosa, Alabama

Special Education Law--representing children with disabilities.

Criminal Law--representing defendants who have diagnoses of mental retardation and/or mental illness.

1984-1994     <u>Director</u>, West Alabama Comprehensive Services, The University of Alabama; Tuscaloosa, Alabama--a university affiliated program for adults who have severe disabilities.

1981-1994     <u>Associate Professor of Special Education</u>
The University of Alabama, Area of Special Education; Appointments in the fields of Mental Retardation and Orthopedic and Other Health Impairments

(Coordinator of Programs for the Multidisabled), The University of Alabama, Area of Special Education; Tuscaloosa, Alabama

1977-1981     <u>Assistant Professor of Special Education</u>, The University of Alabama, Area of Special Education; Tuscaloosa, Alabama Appointments in the fields of Mental Retardation and Orthopedic and Other Health Impairments

1975-1977     <u>Assistant Professor of Special Education</u>, Bowling Green State University; Bowling Green, Ohio

Summer, 1974     <u>Instructor</u>, University of South Alabama; Mobile, Alabama

1973-1975     <u>Graduate Assistant</u>, Department of Special Education, The University of Florida; Gainesville, Florida

1971-1973     <u>Principal</u>, Hillcrest School; Ocala, Florida

<u>1969-1971</u>     <u>EMR Teacher</u>, Long Branch Elementary; Jacksonville, Florida

## PROFESSIONAL ASSOCIATIONS

Phi Delta Kappa

Alabama Bar Association

Mobile County Bar Association

Baldwin County Bar Association

## BAR ADMISSIONS

State of Alabama

United States Court of Appeals for the Eleventh Circuit

United States District Court, Northern District of Alabama

United States District Court, Middle District of Alabama

United States District Court, Southern District of Alabama

United States District Court, Southern District of Mississippi

United States District Court, Eastern District of Louisiana

## PROFESSIONAL AWARDS

Liberty Bell Award.  Mobile Bar Association, Law Day.  May 16, 2003.  In recognition of providing legal representation for individuals who have disabilities.

Professional of the Year.  The ARC of Alabama.  June 4, 1994.  In recognition of providing legal representation for individuals who have disabilities.

## PRESENTATIONS

Alabama Association for Behavior Analysis.  Ethics and behavior analysis.  Tuscaloosa, AL.  October 25, 2007.

Alabama Council for Exceptional Children.  Thirty years of special education:  what went wrong?  Birmingham, AL.  February, 2007.

Alabama Association for Behavior Analysis.   Behavior analysis in the public school program.  Birmingham, AL.  November, 2006.

Conecuh County Board of Education.  Complying with the Individuals with Disabilities Education Improvement Act (2004), Evergreen, AL.  August 3, 2006.

Montgomery County Board of Education.  Complying with the Individuals with Disabilities Education Improvement Act (2004), Montgomery, AL.  June 14, 2006.

Conecuh County Board of Education.  Legal issues associated with providing services to students who have disabilities, Evergreen, AL.  June 8, 2006.

–3–

<u>Lorman Education Services</u>. Student discipline issues in Alabama, Montgomery, AL. May 23, 2006.

<u>Special Education Action Committee: Symposium on Special Education and the Juvenile Justice System</u>. The Individuals with Disabilities Education Improvement Act, as Reauthorized in 2004 and the Juvenile Justice System, Mobile, AL. November 8, 2005.

<u>Alabama Association for Behavior Analysis</u>. Behavior: According to the Individuals with Disabilities Education Improvement Act, as Reauthorized in 2004, Birmingham, AL. October 25, 2005.

<u>Medical Educational Services-Professional Development Network</u>. The Individuals with Disabilities Education Improvement Act, 2004 Reauthorization, Birmingham, AL. December 10, 2004.

<u>Alabama Association for Behavior Analysis</u>. Functional Behavior Assessments, Behavior Intervention Programs, and the Individuals with Disabilities Education Act, Birmingham, AL. November 17, 2004.

<u>Mobile County, Alabama Bar Association Criminal Practice Seminar</u>. Incompetency and Mental Examination--Law, Rules, and Practice, Mobile, AL. May 7, 2004.

<u>Lorman Education Services</u>. Requests for Due Process Hearings, Birmingham, AL. March 5, 2004.

<u>Lorman Education Services</u>. Discipline of Students with Special Needs in Alabama, Montgomery, AL. February 24, 2004.

<u>International Council for Exceptional Children, Teacher Education Division</u>. Best Professional Practice: The Case for Redefinition of Teaching Students with Disabilities, Biloxi, MS. November 16, 2003.

<u>Medical Educational Services-Professional Development Network</u>. Legal Aspects of Student Discipline in Alabama, Birmingham, AL. November 6, 2003.

<u>Medical Educational Services-Professional Development Network</u>, Legal Aspects of Student Discipline in Alabama, Birmingham, AL. November 21, 2002.

<u>Alabama Council of School Board Attorneys</u>, Discipline Under IDEA, Gulf Shores, AL. July 20, 2002.

<u>Lorman Educational Services</u>, Discipline of Students with Special Needs, Montgomery, AL. May 15, 2002.

–4–

Professional Development Network, Special Education Law in Alabama,  Evaluations, Eligibility Determination and IEPs, Birmingham, AL.  May 3, 2002.

Alabama Bar Institute for Continuing Legal Education, Practical Criminal Defense Law Seminar, The Criminal Defendant Who is Mentally Retarded. Tuscaloosa, AL.  September 15, 2001.

Medical Educational Services, Inc.  Special Education Law for the New Millennium in Alabama. Birmingham, AL.  April 20, 2001.

Alabama Criminal Defense Lawyers Association.  *Loosening the Death Belt Seminar V: Matters of Life and Death*. A Practical Guide to Representing People Who have Mental Retardation in Death Penalty Cases.  Birmingham, AL.  January 26, 2001.

Alabama State Bar Association, Disabilities Law Section Meeting, Special Education Law Update,  Orange Beach, AL.  July 14, 2000.
Mobile Bar Association, Continuing Legal Education, Individuals with Disabilities Education Act, as Reauthorized in 1997, 20 U.S.C. 1400, *et seq.*  Mobile, AL. January 20, 2000.

Professional Development Network; Special Education Law in Alabama: Rights and Responsibilities (Individualized Education Program, Placement Decisions and Parent Participation).  Birmingham, AL.  Faculty, February 23, 1999.

Odyssey Program; University of South Alabama, Mobile, AL.  Anatomy of a Murder Trial. Lecturer, Fall, 1998.

Odyssey Program; University of South Alabama, Mobile, AL.  Overview of the Legal Process. Lecturer, Fall, 1997.

Baldwin County Friends of Special Education; Fairhope, AL.  Developing IEPs. February 1997.

Baldwin County Friends of Special Education; Fairhope, AL.  Parents Rights in Special Education.  October 1996.

Alabama Association on Learning and Behavior Disorders; Mobile, AL.  Law in the Special Education Classroom, January  1996.

University of South Alabama; Mobile, AL.   Legal Aspects of an IEP, April  1995.

Alabama Council for Exceptional Children/MR Division; Tuscaloosa, AL.  Legal Aspects of Mainstreaming, February 1994.

Juvenile Practice and Procedure Seminar; Birmingham, AL.  How to of a 94-142 Case, November 1991.

Repton Senior High School, Reston, AL.  What I would tell my son on his graduation day, Commencement Address, June  1989.

Alabama Municipal Judges Conference; Montgomery, AL.  The Mentally Retarded in the Municipal Court System, March  1989.

Alabama Council for Exceptional Children SuperConference; Birmingham, AL.  The Impact of Recent Litigation and Legislation on Special Education in Alabama, February  1989.

Alabama Municipal Judges Conference; Tuscaloosa, AL.  The Mentally Retarded in the Municipal Court System, February  1989.

Alabama Attorney General's Commission on the Handicapped; Huntsville, AL. Providing Educational Services to the Handicapped in Alabama, October 1988.

Mississippi Band of Choctaw Indians; Philadelphia, MS.   Managing the Behavior of Students Who Are Handicapped, August  1988.

University of Montevallo--Teacher Inservice Center; Talladega, AL.  The Pragmatics of Mainstreaming, August  1988.

Association of Retarded Citizens of Jefferson County; Talladega, AL.  The Pragmatics of Mainstreaming, August  1988.

Association of Retarded Citizens of Jefferson County; Birmingham, AL.   Graduation Address; Preparing for the Future in Special Education, August  1988.

Universities of Alabama/ Livingston--Teacher Inservice Center; Tuscaloosa, AL.  The Law and Special Education, July 1988.

Auburn University Student Counsel for Exceptional Children; Auburn, AL.  AIDS and Special Education, April 1988.

Association for Retarded Citizens of Morgan County; Decatur, AL.  Special Education in Alabama: Past, Present and Future, March 1988.

Alabama SuperConference, Council for Exceptional Children; Birmingham, AL. AIDS and Special Education,  February  1988.

Association of Retarded Citizens of Jefferson County; Birmingham, AL.  Due Process, January 1988.

Council for Exceptional Children, Birmingham Chapter; Birmingham, AL.  The Law and Special Educators,  November 1987.

Tuscaloosa City Schools; Tuscaloosa, AL. Physical Management of Aggressive Behaviors, November 1987.

University of Montevallo--Teacher Inservice Center; Montevallo, AL. Mainstreaming Exceptional Children, August 1987.

Alabama SuperConference, Council for Exceptional Children; Montgomery, AL. Special Education and the Law: Teaching the Mentally Retarded About Their Miranda Rights, February 1987.

Decatur City Board of Education; Decatur, AL. Physical Management of Aggressive Behavior, January 1987.

The University of Alabama/Livingston -- Teacher In-Service Center; Tuscaloosa, AL.

    1.    Identifying Handicapped Students in the General Education Program, August 1986.

    2.    Physical Management of Aggressive Behavior, July 1986.

    3.    Physical Management of Aggressive Students, February 1986.

    4.    Needs and Characteristics of Handicapped Students, January 1986.

    5.    The Use of Punishment with Handicapped Students and Legal Considerations Relative to Special Education, July 1985.

    6.    The Educable Mentally Retarded in Public School Programs, July 1985.

Alabama State Department of Education (State Board Hearing on Programs for Exceptional Children and Youth, Policies and Procedures Manual; Tuscaloosa, AL. Policy Recommendations for Mental Retardation Programs, September    1985.

Oak Hill School; Tuscaloosa, AL. Special Education in the Future (Graduation Address), May 1985.

Cerebral Palsy Institute; Tuscaloosa, AL. Legal Implications for Public Law 94-142, June 1984.

Florida Developmental Disabilities Learning Resource Systems Annual Meeting; St. Augustine, FL. Conferencing with Parents of Early Childhood Handicapped Children and Using the IEP Meeting as a Parent Conference, 1983-1984.

    1.    Interactions with Paraprofessionals, May 1983.

2.    Physical Management of Aggressive Behavior,  May and October 1983; February and March 1984.

Alabama SuperConference, Council for Exceptional Children; Birmingham, AL. Utilizing Microcomputers as an Augmentative Communication Aid, February 1984.

West Alabama Consortium; Tuscaloosa, AL.  Sex Education for the Mentally Retarded and Managing Aggressive Behaviors of Handicapped Students, October 1983.

Montgomery Children's Center; Montgomery, AL.  Augmentative Communication Aids for the Non-Speaking, January 1983.

Tuscaloosa City Schools; Tuscaloosa, AL.   Managing Aggressive Behaviors of Handicapped Students, January 1983.

Council for Exceptional Children; National Meeting, Washington, D.C.   Providing Consulting Assistance for Least Restrictive Environments, April 1980.

Gatlinburg Conference on Research in MR/DD; Gatlinburg, TN.  Chairperson.  Self-Injurious and Stereotyped Behaviors, March 1980.

State Meeting of the American Association on Mental Deficiency; Birmingham, AL. University Programs Designed to Train Professionals to Work With the Severely and Profoundly Handicapped, December 1980.

National Conference of American Speech and Hearing Association; Detroit, MI.  A Comparison of the Use of Blissymbolics and Manual Signs When Used with Severely and Profoundly Mentally Retarded Subjects, November 1980.

National Conference of the American Association of the Severely and Profoundly Handicapped; Chicago, IL; Legal Aspects of Using Punishment with a Severely/Profoundly Handicapped Population and Defining the Severely and Profoundly Handicapped from an Educational Perspective, October 1979.

Council of Administrators of Special Education; State of Alabama Meeting; Montgomery, AL.  Programming for the Severely and Profoundly Handicapped, July 1979.

Southeastern Regional Coalition for the Preparation of Personnel to Work With the Severely Handicapped;  State Education Agency Meeting; Nashville, TN.  Certification Reciprocity for the Severely/Profoundly Handicapped Area, May 1979.

Cerebral Palsy Institute; The University of Alabama; Tuscaloosa, AL. Programming for the Severely/Profoundly Handicapped, June 1978.

National Conference of the American Association on Mental Deficiency; Denver, CO. Residential Programming: A Model for Private Residential Institutions, May 1978.

Professional Association for the Retarded, State Meeting; Columbus, OH.  Developing Programs for the Severely/Profoundly Retarded, October 1977.

International Conference of the Council for Exceptional Children; Atlanta, GA. Creative Behavior of Trainable Mentally Retarded Adolescents, April 1977.

Sunshine Children's Home; Program Committee; Toledo, OH.  Program Planning for the Residential Institution, January 1977.

Professional Association for the Retarded, State Meeting; Columbus, OH.  Parent Counseling, October 1976.

Lucas County Board of Mental Retardation, Orientation Meeting; Toledo, OH. Normalization of TMR Students,   September 1976.

District Meeting, Professional Association for the Retarded; Bowling Green, OH. Intermediate-Level TMR Program Training, May 1976.

Florida Council for Exceptional Children; Miami, FL.  Citizens Advocacy at the University of Florida, May 1974.

Florida Association of Supervisors and Curriculum Directors; Orlando, FL.  Developing a Curriculum for the Trainable Mentally Retarded in a Moderate Size County, February 1972.

## CONSULTING

Conecuh County Board of Education; Educational/Legal Consultant, 2006.

Tuscaloosa City Schools; Tuscaloosa, AL.  Legal Consultant, 1998 - 1999.

Madison County Schools; Huntsville, AL. Legal Consultant, 1989.

Huntsville City Schools; Huntsville, AL. Expert Witness, 1988 - 1989.

Shelby County Board of Education; Huntsville, AL.  Legal Consultant, 1988.

Mississippi Band of Choctaw Indians; Philadelphia, MS.  October 1988.

Alabama Developmental Disabilities Program; Tuscaloosa, AL.  Expert Witness, 1985-1994.

United States Department of Education; Washington, D.C. Grant Review; August 1987.

Alabama State Department of Mental Health; Eufala, AL. Programming for the Severely Handicapped Adult, February 1986.

Alabama Developmental Disabilities Advocacy Program; Tuscaloosa, AL. Developing Individual Education Plans, September 1984.

Guntersville School System; Guntersville, AL. Sex Education for the Handicapped, August 1984.

Jasper City School Board; Jasper, AL. Physical Management of Aggressive Behavior, March 1984.

Mobile County School Board; Mobile, AL. Conferencing with Parents of Exceptional Children: Topical Areas of Concern, February 1984.

Mobile County School Board; Mobile, AL. Conferencing with Parents of Exceptional Children: Counseling Needs, November 1983.

United States Department of Education; Washington, D. C. Grant Review, April 1983; October 1982; December 1979.

Central Mississippi Legal Services; Jackson, MS. Expert Witness, August 1980 - May 1982.

Mobile County Schools; Mobile, AL. Assessing Multihandicapped Students, September 1981.

Talladega County Schools; Talladega, AL. Programming for the Severely/Profoundly Handicapped, January 1981.

Partlow State School; Tuscaloosa, AL. Programming for the Most Profoundly Handicapped, August 1979-1982.

Project REACT; Tuscaloosa, AL. July 1979-1982.

Jasper City Schools; Jasper, AL. Special Education Program Evaluation, June 1979.

Alabama State Department of Education; Due Process Hearing Officer, December 1978-1981.

John S. Jones Elementary School (Severe/Profound Program); Gadsden, AL. September 1978.

Tuscumbia City School Board; Tuscumbia, AL.  September 1978.

Sheffield City School Board; Sheffield, AL.  September 1978.

Sumter County Opportunity Center, Inc.; York, AL.  April - December 1978.

Regional Education Center Classes for the Severely/Profoundly and Multiply Handicapped; Northport, AL.  April 1978.

Head Start Programs of Dadeville; Montgomery and Anniston, AL.  The Use of IEP=s with Young Children Who Are Handicapped,   March/April 1978.

Alabama Cluster III of Head Start Programs; Montgomery, AL.   Developing Individual Education Plans,  November 1977.

Cuyahoga Board of Mental Retardation; Cleveland, OH.  Assessments and Activities for TMR Students and Evaluation Techniques for Principals in the TMR School, March 1977. Sunshine Children's Home; Maumee, OH.  Program Consultant, January - August, 1977.

Cuyahoga Board of Mental Retardation; Cleveland, OH.  Philosophy of Education for TMR Centers, January 1977.

Department of Special Education, University of Florida, Gainesville, FL.  Career Education for the Handicapped, December 1976.

Van Wert Board of Mental Retardation; Van Wert, OH.  Teaching Trainable Mentally Handicapped Students,  February 1976.

Cuyahoga Board of Mental Retardation; Cleveland, OH.  Appropriate Skills for Trainable Students, March 1975.

Putnam County Public Schools; Putnam County, FL.  Career Education for the Mentally Retarded, October 1974.

## PROFESSIONAL PARTICIPATION

Southeastern Regional foundation for Autism Spectrum Disorders, Board Member.  Mobile, AL.  2007-Present.

Alabama Disabilities Advocacy Program, Advisory Board.  The University of Alabama; Tuscaloosa, AL.  2004-Present.

Editorial Board, *Addendum*, Alabama State Bar Association.  Montgomery, AL.  2001.

Board Member, Mobile Bar Association, Volunteer Lawyer Program (Pro Bono Program) 1998-Present.

Member, Program Advisory Committee, Learning Disabilities Association; Mobile, AL. 1996-1997.

Director, Tuscaloosa Area Special Olympics; Tuscaloosa, AL. 1991 - 1994.

Member, Board of Directors; Alabama State Special Olympics; Montgomery, AL. 1991-1994.

Member, Outreach Committee, Alabama State Special Olympics; Montgomery, AL. 1991 - 1994.

Member, Mayor's Council for People with Disabilities; Tuscaloosa, AL. 1992 - 1994.

Chairperson, Goals and Objectives Committee, Mayor's Council for People with Disabilities;   Tuscaloosa, AL. 1992 - 1993.

Chairperson, Southeastern American Association on Mental Retardation - Education Division; Atlanta, GA.  1991 - 1993.

Treasurer, Alabama Division, Association on Mental Retardation; Montgomery, AL. 1989 - 90.

Editorial Board, University of Alabama, School of Law,  Law and Psychology Review, Tuscaloosa, AL.  1987-1988.

Member, Professional Advisory Committee, Indian Rivers Mental Health Center; Tuscaloosa, AL. 1988 - 1994.

Member, College of Education, The University of Alabama, Leadership Review Committee; Tuscaloosa, AL.  1987 - 1988.

Chairperson, By-Law Committee, Alabama Council for Exceptional Children, 1985-1987.

President, Alabama Council for Exceptional Children/MR Division; Montgomery, AL.  1985 - 1986.

President-elect, Alabama Council for Exceptional Children/MR Division; Montgomery, AL. 1984 - 1985.

Chairperson, Evaluation and Review Subcommittee of the Tuscaloosa Association for Retarded Citizens; Tuscaloosa, AL.  1985.

Board Member, Tuscaloosa Association for Retarded Citizens; Tuscaloosa, AL. 1983 - 1993.

Chairperson, Regional Education Center Advisory Committee; Northport, AL. 1982 - 1985.

President, United Cerebral Palsy of Tuscaloosa and West Alabama; Tuscaloosa, AL. 1981 - 1982.

Board Member, United Cerebral Palsy of Tuscaloosa and West Alabama; Tuscaloosa, AL. 1979 - 1981.

Vice-President, United Cerebral Palsy of Tuscaloosa and West Alabama; Tuscaloosa, AL. 1979 - 1981.

President, Council for Exceptional Children, Chapter 244; Tuscaloosa, AL.  1978 - 1979.

Vice-President, Council for Exceptional Children; Chapter 244; Tuscaloosa, AL; 1978 - 1979.

Member, Education Committee, Executive Board, Alabama Association for Retarded Citizen; Montgomery, AL.  1979.

Member, Severely/Profoundly Handicapped Certification Committee, Alabama State Department of Education, 1977 - 1978.

Board Member, Wood County Association for Retarded Citizens; Bowling Green State University; Bowling Green, OH. 1975 - 1976.

Committee to Develop a Collaborative Model for Public Education, College of Education, University of Florida; Gainesville, FL., Fall 1973.

Principal's Committee on Comprehensive Planning, Marion County Public Schools; Marion County, FL., 1973.

Co-Chairperson, Marion County Special Olympics; Marion County, FL. 1972.

Grant Review Committee for New Hope School and Opportunity Workshop; Marion County, FL. 1972.

Representative, Systems Analysis for Education Training, Duval County Public Schools; Jacksonville, FL. Spring 1970.

Representative. Committee on Public School Desegregation, Duval County Public Schools; Jacksonville, FL. Spring 1970.

## **PUBLICATIONS**

2006    Student discipline issues.  Lorman Education Services.  With Eliabeth M. Hall.

1996    Educational goals for individuals with a severe disability: parental and professional preferences. *Education,* June 22, 1996. With Kenneth Coffey.

1989    Mental retardation and unconscionability. *Law and Psychology Review,* 18, 77 - 90.

        Teaching Miranda rights to students who have mental retardation. *Teaching Exceptional Children,* 21, 2, 38-43.  With A. Bishop and E. Stevens.

1988    Learning disabilities, postsecondary education, and Section 504 of the Rehabilitation Act of 973.  *Law and Psychology Review,* 12, 61 - 78.

        AIDS and special education.  In *Proceedings, Alabama Teacher Education Division.*  With E. Stevens.

1987    Toward a conceptualization of seriously emotionally disturbed.  In *Proceedings of the Eighth National Institute on Legal Problems of Educating the Handicapped.* UP-10.  Alexandria, VA: CRR Publishing Co.  With E. Stevens.

1985    The use of punishment with handicapped students and legal considerations relative to special education.  Monograph.  *The University of Alabama/Livingston, Teacher In-Service Center.*

        The educational definition and classification of mental retardation in the state of Alabama. (1985).  *The Alabama Council for Exceptional Children Journal,* 6(1), 4-6.  With T. Russell and R. Palk.

1984    Correlates of therapeutic progress by infants with cerebral palsy and motor delay.  *Perceptual and Motor Skills,* 58, 159-163.  With P. Parette and L. Holder.

1983    Teacher/parent Conferencing skills: Inservice modules. Monograph.  *Florida Diagnostic and Learning Resources System.*

        Assessment of early therapeutic intervention effectiveness utilizing Bayley psychomotor gains.  *Capstone Journal of Education,* 3 (2), 30-38.  With P. Parette and L. Holder.

1982     Guidelines for the development of personnel preparation programs designed to train personnel to teach severely handicapped individuals. *Teacher Education in Special Education*, 4, 1. With members of the Southeastern Regional Coalition of Personnel Preparation for the Severely Handicapped.

Characteristics of teachers and teacher aides of the severely and profoundly handicapped. *Education and Training of the Mentally Retarded, 17* (3), 190-195. With R. Escudero.

1981     The effect of the use of galvanic skin responses in determining the reactivity of special education majors to nonverbal career related cues. *College Student Journal*, 15 (4), 290-294. With T. Uno and R. Gargiulo.

1979     Punishment: Beyond the right to an education. (1979). *Law and Psychology Review*, 5, 79-101. With H. Stephens.

The dimensional preferences of individuals who are mentally retarded. *Bulletin of the Psychonomic Society*, 14 (3), 219-222. With R. Gargiulo and T. Uno.

1978     Communication for the severely and profoundly handicapped: new challenges. *Journal of Speech and Hearing Association of Alabama*, 8, 1.

Galvanic skin responses of special education students to relevant and nonrelevant verbal cues. (1978). *College Student Journal*, 12 (2), 204-211. With T.-Uno and R. Gargiulo.

1977     Creativity in the developmentally disabled adolescent. *Psychological Reports: Perception and Motor Skills*, 40, 1207-1212. With T. Uno, R. Gargiulo, and M. Maurer.

A study of adaptive behavior scale ratings for community based TMR adults. *Mental Retardation*, 15 (1), 44-45. With J. Whorton.

1976     Creativity behavior of trainable and educable mentally retarded adolescents. *Journal of Creative Behavior,* 10 (3), 221. with T. Uno, R. Gargiulo, and M. Mauter.

## **SPONSORED PROGRAMS (FUNDED)**

1984 -1994   Annual renewal grants. West Alabama Comprehensive Services, Alabama State Department of Mental Health.

–15–

1984    Utilizing Microcomputers as an Augmentative Communication Aid, the University of Alabama, College of Education Research Grant.

The Use of Microcomputer Technology with a Severely Handicapped Adult, the University of Alabama, Graduate School Biomedical Research Grant.

1983    Severe/Profound Teacher Preparation, Office of Special Education, United States Department of Education.

1982    Severe/Profound Component , Area of Special Education Training Grant. Office of Special Education: Handicapped Personnel Training Program, Handicapped Teacher Education.  United States Department of Education.

Trainers of Paraprofessionals, Office of Special Education, United States Department of Education.

1981    Severe/Profound Component, Area of Special Education Training Grant. Office of Special Education: Handicapped Personnel Training Program, Handicapped Teacher Education, United States Department of Education.

1980    Severe/Profound Component, Area of Special Education Training Grant. Office of Special Education:  Handicapped Personnel Training Program, Handicapped Teacher Education, United States Department of Education.

Trainers of Paraprofessionals, Office of Special Education, United States Department of Education.

1979    Severe/Profound Component, Area of Special Education Training Grant. Bureau of Educationally Handicapped:  Handicapped Personnel Training Program, Handicapped Teacher Education, United States Department of Education.

Rural Education and Corrective Therapy, United Cerebral Palsy of Alabama, Inc.

Conference on the Severely/Profoundly Handicapped, Project RESET, Bureau of Educationally Handicapped Training Grant, United States Department of Education, Department of Health, Education and Welfare.

Alternative Forms of Communication for the Severely and Profoundly Handicapped, Venture Fund, The University of Alabama.

1978    Severe/Profound Component, Area of Special Education Training Grant. Bureau of Educationally Handicapped Training Grant, United States Department of Education, Department of Health, Education and Welfare.

1977        The Severely/Profoundly Handicapped:  In-Depth Training, Alabama State Department of Education.

Severe/Profound Component, Area of Special Education Training   Grant. Bureau of Educationally Handicapped Training Grant, United States Department of Education, Department of Health, Education and Welfare.

TMR Program Redesign, Project 419 (University Redesign ), Bowling Green State University.

1976        Characteristic Assessment of Elderly Severely Mentally Retarded Individuals. Faculty Research Committee, Bowling Green State University.

–17–