IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| J.R., a minor, by his mother and father EAR and TMR, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NUMBER: 2:06-cv-1120-MEF |
| PIKE COUNTY BOARD OF EDUCATION, et al., | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN REPLY TO
PLAINTIFFS' OPPOSITION
TO
MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF
DEFENDANTS PIKE COUNTY BOARD OF EDUCATION,
SAMUEL MARK BAZZELL, TERRY CASEY, BUDDY PYRON
AND ROBERT MCDANIEL**

Defendants, Pike County Board of Education (hereinafter "Board" or "PCBE", Samuel Mark Bazzell (hereinafter "Bazzell"), Terry Casey (hereinafter "Casey"), Buddy Pyron (hereinafter "Pyron"), and Robert McDaniel (hereinafter "McDaniel") (or hereinafter collectively referred to as "Individual Defendants"), submit this brief in reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

<u>Preliminary Statement</u>

This is a tragic case.  A crime was committed and the criminal has gone to jail.  Nothing can truly rectify what happened to the minor student.

But these Defendants respectfully submit that draining money away from the educational budget of the Pike County School System for damages and attorney fees will only hurt an innocent school system – money that otherwise will be spent to educate students in Pike County.  The U.S. Supreme Court's decisions make it clear that this should not happen where school officials did nothing to cause the criminal misconduct of the employee.

The facts of this case[1] and the law as clearly stated by the United States Supreme Court should entitle these Defendants to summary judgment.  In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S. Ct. 1989, 141 L.Ed.2d 277 (1998), Justice O'Connor explained that liability under Title IX –

> . . . will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has <u>actual</u> knowledge of

---

[1] At the outset the Court should understand that Plaintiffs stipulate and concede that no School District official knew that Charles Coon was sexually abusing J.R. until Coon pled guilty in the summer of 2005. By that time, Coon had retired from his employment with the PCBE.  Plaintiffs concede as follows:

> J.R. does not contest Defendants' contention that neither the parents nor any School District official knew that Coon was sexually abusing J.R. until he pled guilty in the summer of 2005.

(Pl. Response to Defs' MSJ 39.)

discrimination in the recipient's program and fails adequately to respond.

We think, moreover, that the response must amount to deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation. That framework finds a rough parallel in the standard of deliberate indifference.

Under a lower standard there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employee's independent action.

524 U.S. 290-291.

In *Gebser*, as in the instant case, the Plaintiffs could not assert that the Defendants had actual notice of the sexual abuse. Absent such proof, the Supreme Court affirmed judgment for the school district in *Gebser* explaining:

The only official alleged to have had information about Waldrop's misconduct is the high school principal. That information, however, consisted of a complaint from parents of other students charging only that Waldrop had made inappropriate comments during class, which was plainly insufficient to alert the principal to the possibility that Waldrop was involved in a sexual relationship with a student.

524 U.S. 291.[2]

---

[2] In the present case, the only complaint that even remotely references a sexual connotation occurred in April 2005, the month before Coon resigned. An informant shared names of students who might know if Coon had been smoking with them and offering them marijuana. The officer reported this information to Superintendent Mark Bazzell. The officer said that his informant referenced that Coon had his "butt buddies." This reference "butt buddies" was not made in a sexual context. If it had been, the police officer had the statutory obligation and responsibility to investigate the complaint pursuant to Ala. Code § 26-14-3. However, the reference to "butt buddies" was not made in a sexual context. More importantly as pertinent to this case, J.R.'s name was never mentioned as a "butt buddy" of Coon. The informant made no mention of J.R.

In *Gebser* as in the present case, petitioners focused primarily on Lago Vista's asserted failure to have an effective policy and procedure for sexual harassment claims.[3]  The United States Supreme Court dismissed these contentions – contentions similar to J.R.'s contention in this case:

> Lago Vista's alleged failure to comply with the regulations, however, does not establish the requisite <u>actual</u> notice and deliberate indifference.  <u>And in any event the failure to promulgate a grievance procedure does not in itself constitute discrimination under Title IX</u>.

524 U.S. 292 (emphasis added.)

In *Gebser*, Justice O'Connor summarized the issue for courts to resolve and the standard to use regarding sexual abuse complaints:

> The issue in this case, however, is whether the independent misconduct of a teacher is attributable to the school district that employs him under a specific statute designed primarily to prevent recipients of federal financial assistance from using funds in a discriminatory manner.  . . .

> Until Congress speaks directly on the subject, however, we will not hold a school district liable in damages under Title IX for a teacher's

---

and the investigation involving discussions with students did not disclose J.R.'s name at any time. No one mentioned J.R.  A diligent search took place.  Coon was put on administrative leave.  He was given a drug test.  Law enforcement officials were consulted.  No other complaint about Coon's – smoking, grades, cell phones, grabbing a student, transporting a student – had any sexual context.

[3] In Alabama, state law mandates the procedure that must be followed:  Ala. Code § 26-24-3 requires school officials to report suspicion of sexual abuse to law enforcement officials.  Plaintiffs in this case ignore this procedure and ignore the fact that each of the named individuals stated in their affidavits that by law they would call law enforcement officials to report suspected sexual abuse.

sexual harassment of a student <u>absent actual notice and deliberate indifference</u>.

524 U.S. 292-293 (emphasis added).

In this case, neither J.R.'s parents nor school officials had any notice that Charles Coon was sexually abusing J.R. until Coon was arrested for abusing another minor at his home in Greenville.[4] That is an undisputed fact. (Pl. Ex. 11 E.R. Depo. 96-101.)

Defendants acknowledge and regret profoundly what Coon did.

Yet Defendants hope the Court will be mindful of the fact that Plaintiffs have sued the Board and four distinguished career educators. Plaintiffs sue the career educators both in their official capacities and as individuals.[5] They are sued as individuals when there is absolutely no justification for doing so: all had only an arm's length business relationship with Coon – a much more tenuous relationship than, for example, Mrs. Reed, J.R.'s mother, who was president of the band boosters, attended band practices, rode on the band bus, chaperoned the band students, and welcomed Coon into her home – yet suspected nothing. (Def. Ex. 15 E.Reed Depo. 13-21.)

---

[4] By the time Coon was arrested in July 2005, Coon had retired from the PCBE and was no longer an employee. Coon was a welcomed guest in the Reed home and had permission to drive J.R. and his brother and sister home as an accommodation to J.R.'s parents. (Pl. Ex. 11 E.R. Depo. 24, 79-80) Coon had permission to bring J.R. home after practice; it was a convenience for Mrs. Reed. (Pl. Ex. 11 E.R. Depo. 21.)

[5] J.R.'s mother, Mrs. Reed, stated that she had no idea why she was suing these educators in their individual capacities. (Pl. Ex. 11 E.R. Depo. 100-101, 106.)

All four of these career educators – men with excellent credentials and professional records – have endured the burden of this lawsuit since December 19, 2006.    Since the hard facts[6] and abundant case law compel judgment for Defendants where

1.    they had no actual knowledge of the abuse;

2.    where the records show they were never indifferent or insensitive to complaints; and

3.    where they had no policy, no custom, no history of conduct that in any way contributed to, enabled or caused Coon to do what he did

the Defendants urge the Court to render summary judgment. Each of these Defendants is entitled to the defense of qualified immunity.    *Doe v. Autauga County Bd. of Educ.*, 2007 W.L. 3287347 8 (M.D. Ala. 2007).

---

[6] Plaintiffs completely mislead the Court about the core facts.  For example, at p. 11 of Plaintiffs' reply, the Court will find the following statement attributed to parent Polly King:  "Parent King testified that she was concerned that A.H. was being sexually abused by Coon because of her experience with sexually abused children."  When the Court verifies what Polly King says in her deposition, King says nothing of the kind:

Q.    Okay.  Now, it's my understanding that at some point you had some concerns about Mr. Coon – Charles Coon, I think his name is – and may have brought these concerns to the attention some official.  And the purpose of this testimony is just to get the history of what happened.  That's all.

A.    Not anything on sexual abuse, I didn't.  He offered my son a Marijuana cigarette on the ride home from a football game one night.  And I went to the school and complained about that.  That's the only time that I have had any complaint about anything – with him.

(Def. Ex. 17, King  11.)

To underscore the injustice of this lawsuit against these educators, Defendants respectfully ask the Court to consider – by way of an entirely hypothetical situation to bring home the clear injustice of this lawsuit against these dedicated educators.

What if a federal court bailiff sexually molested a summer intern working in the office of a United States District judge?  Assume that the bailiff had been a 25-year federal employee with no prior record of sexual misconduct.  Assume that as a result of the bailiff's misconduct, the summer intern sued Judge Myron Thompson or Judge Harold Albritton on the basis that there had been reports that the bailiff had smoked in the federal building, driven jurors home, and acted abrasively on occasion.  If such a situation were to happen, this Court would make sure that the hard, relevant facts were honestly addressed:

> Did the judge know the summer intern was being molested by the bailiff?
>
> Were there any complaints about the bailiff of a sexual nature prior to this incident?
>
> Did the judge have a policy or custom to encourage the bailiff to sexually abuse the summer intern?
>
> Was there any evidence that the judge acted with indifference to reports that the bailiff was sexually abusing the summer intern?

This Court, reacting to such a hypothetical situation, would not exempt a judge from sanctions of the law, but the Court would not – the undersigned respectfully

submits – put a judge through a trial when the facts and the case law warrant summary judgment.

PCBE Superintendent Mark Bazzell, Principals Casey and Pyron, and Assistant Principal McDaniel deserve the same careful and exacting treatment.[7] These are outstanding professional educators who do not deserve to be harassed for Charles Coon's criminal conduct.

Plaintiffs construct a case against Defendants based on asserted negligence in that they failed to extrapolate sexual abuse from clues such as smoking on campus, letting a child use a cell phone (with permission of the father), and bringing J.R. home in his vehicle as authorized by Plaintiff's mother. Yet the case law is clear that a negligent failure to act is not deliberate indifference: "A showing of simple or even heightened negligence will not suffice under the deliberate indifferent standard." *See Rost v. Steamboat Springs R.E.-2 School*, 511 F.3d 1114, 1122 (10th Cir. 2008).

In this case, the evidence is not sufficient to establish actual knowledge before July 2005. Plaintiffs stipulate that Defendants had no such knowledge prior to July 2005.

Moreover, the record is undisputed that the Defendants investigated in a reasonable manner the one complaint that had any arguably sexual connotation.

---

[7] Plaintiffs do not allege that the PCBE members were involved in or had any knowledge of the abuse.

With regard to the complaint in April about Coon smoking, and smoking with his "butt buddies", the District acted appropriately.  The report from the police officer was to check smoking and the presence of marijuana.[8]  No sexual misconduct.  If sexual misconduct had been an issue, by Alabama law, the Troy Police Department would have had the obligation to conduct an investigation as required by Ala. Code § 26-14-3.  The information did not reference sexual abuse.  Nevertheless, Bazzell immediately put Coon on administrative leave and ordered Coon to be drug tested.  That Superintendent Bazzell took the information seriously was reflected in the letter that he sent to Mr. Coon placing him on administrative leave:

> Dear Mr. Coon:
>
> This purpose of this correspondence is to notify you that you are being placed on administrative leave with pay, effective immediately, pending the outcome of an investigation into alleged misconduct involving a number of students.  According to reports, you have allegedly engaged in the use of illegal drugs with students, provided illegal drugs to students, and also allegedly engaged in other inappropriate activities with students of a sexual nature.  Since these reports involve allegations of criminal conduct on your part, I have also notified the appropriate law enforcement personnel.

Pl. Ex. 14.  (Copy of letter attached as Def. Ex. 23.)

Moreover, the named students were questioned not just about smoking but if they knew of any other inappropriate conduct by Coon.  The result of the

---

[8] The report came from law enforcement officials.  So Ala. Code § 26-14-3 was not ignored. Moreover, Superintendent Bazzell went back to the law enforcement officials at both the Troy City Police Department and the Brundidge Police Department to discuss what he had done, what he had found, and what he intended to do.

investigation was reported first to the Troy Police Department and then to the Brundidge City chief of police.  None of the students corroborated the information from the informant.  Coon was allowed to return to the classroom,[9] but Superintendent Bazzell met with Coon, admonished him in purpose and then provided a letter reflecting his comments dated April 8, 2005 as follows:

Dear Mr. Coon:

The purpose of this correspondence is to notify you that the investigation into allegations of misconduct on your part involving students has been completed.  The nature of these allegations were outlined in my letter to you dated April 1, 2005.

After review, there is no evidence at this time to substantiate these claims.  However, this matter has been turned over to the appropriate law enforcement agency for further investigation if they find it necessary.  Also, should additional information come to light, it is possible the investigation could be reopened.

The investigation did reveal numerous reports that on several occasions you used cigarettes with students.  If this is the case, I am requesting that you cease and desist from this practice.  As you know, the use of tobacco products by individuals who are less than 21 years of age is a criminal act.  It is also criminal to provide these items to these individuals.  The use of tobacco products by staff while on school campus is also a violation of school board policy.

In addition, the investigation revealed numerous reports of students being transported in your personal vehicle.  This should also cease unless it involves extreme situations where the safety and wellbeing of students are involved.  Routine transport of students in your personal

---

[9] Coon was a tenured teacher.  He could not be dismissed except for cause following due process and arbitration.  *See:  Hart v. Paint Valley Local Sch. Dist.*, 2002 W.L. 31951264 (S.D. Oh.) at p. 16 (negligent retention).

vehicle should not occur.  The liabilities for both you and the school system are obvious.

With the conclusion of this investigation, I am hereby clearing you to resume your duties beginning Monday, April 11, 2005.

(Pl. Ex. 14 p. 15.)  (Copy of letter attached as Def. Ex. 24.)  (Emphasis added.)

As a matter of law, what Superintendent Bazzell and the educators did in regard to the investigation of this matter was not deliberate indifference.

Superintendent Bazzell and his administrators Casey, Pyron and McDaniel are entitled to summary judgment:  No actual notice of the sexual abuse; no custom, policy or history enabling sexual abuse; and no deliberate indifference.

## Essential Facts Ignored in Plaintiffs' Brief[10]

### Deposition of Elizabeth Reed

1.    Coon had permission to bring J.R. home after practice; it was a convenience for her.  (Def. Ex. 15 Reed 21)

2.    Daughter Jessica and J.R. rode with Coon on a regular basis.  Mrs. Reed gave permission for Coon to drive them.  (Def. Ex. 15 Reed 22.)

3.    Coon would come to their house and visit.  During the 2004-2005 school year, Coon would come to their home on weekends.  He was welcome. (Def. Ex. 15 Reed 24.)

---

[10] The essential affidavits submitted by Defendants are attached to the evidentiary submission in support of this brief for reference by the Court:  Exhibit 26:  Mona Watson; Exhibit 27:  Mark Bazzell; Exhibit 28:  Robert McDaniel; Exhibit 29:  Terry Casey; Exhibit 30:  Walter Pyron.

4.     Mrs. Reed had no information or belief that J.R. was being abused in any way during the 2004-2005 school year.  (Def. Ex. 15 Reed 28.)

<u>Deposition of Karen Berry, Special Education Coordinator</u>

5.     Mentally retarded students are not necessarily more susceptible to be a victim of sexual abuse than regular students.  (Def. Ex. 14 Berry 22.)

6.     Karen Berry tells her teachers in training to be aware of any change in behavior and to report it to the counselor. (Def. Ex. 14 Berry 24.)

7.     Karen Berry has participated in workshops addressing how to identify sexually abused children.  (Def. Ex. 14 Berry 26.)

8.     Karen Berry provided training to her staff to identify signs of abuse. These include academic problems; social problems.  A sheet covering symptoms of abuse is circulated.  (Def. Ex. 14 Berry 33.)

9.     The Pike County policy on sexual harassment/sexual abuse was prepared by Karen Berry from documents provided by the Office of Civil Rights (OCR).  (Def. Ex. 14 Berry 44.)

10.     Every teacher gets a copy.  (Def. Ex. 14 Berry 47.)

11.     The procedure on how to report sexual abuse is explained.   The principal and counselor are required to notify the appropriate authorities.  (Def. Ex. 14 Berry 48.)

12.    Berry investigated the complaint whether teachers had let J.R. out of class repeatedly to go to the band room.  J.R.'s teachers said this did not happen. (Def. Ex. 14 Berry 51.)

<u>Deposition of Mona Watson, Counselor at Pike County High School</u>
<u>And Director of the Pike County Child Advocacy Center</u>

13.    Mona Watson served as counselor at Pike County High School until January 2005.  (Def. Ex. 5 Watson 9.)

14.    Watson knew J.R. and was professionally trained to identify child abuse.  Her training included forensic interviewing and evaluation of sexually abused children.  (Def. Ex. 5 Watson 8.)

15.    Watson, as an employee of the Pike County Board, has had training to deal with sexually abused students with mental retardation.  (Def. Ex. 5 Watson 10.)

16.    Watson does not agree that special education students are more likely to be sexually abused.  (Def. Ex. 5 Watson 10.)

17.    Watson has tracked statistics for Bullock, Pike and Coffee counties. There is no indication that any certain group of citizens is more likely to be abused. (Def. Ex. 5 Watson 12.)

18.    In Pike County, the Building Based Student Support Team trains teachers to recognize sexual abuse.  This is done in the fall at Pike County High School.  (Def. Ex. 5 Watson 23.)

19.    At this training, recognition of sexual abuse was always discussed. (Def. Ex. 5 Watson 24.)

20.    Watson discussed procedures with teachers on what to do and how to respond to a suspicion of child abuse.  (Def. Ex. 5 Watson 25.)

21.    There was not a procedure on investigating child abuse because it was not the Board's responsibility.  It is done by law enforcement or DHR.  (Def. Ex. 5 Watson 27.)

22.    Watson was aware of the incident where Coon allowed Blake Faulkner to use his cell phone.  Watson thought he was ignorant to have done so but they all let kids use their phones at some time to make calls.  (Def. Ex. 5 Watson 51.)

23.    Watson did not find the fact that Coon let Blake Faulkner have his phone unusual, just stupid.  (Def. Ex. 5 Watson 52.)

<u>Deposition of Lucia Grantham,</u>
<u>Director of Human Services</u>
<u>Troy University</u>

24.    Grantham provided in-service training for Pike County regarding sexual abuse.  (Def. Ex. 18 Grantham 11.)

25.    Grantham provided in-service training on indicators of sexual abuse. (Def. Ex. 18 Grantham 12.)

26.    Grantham believed that Mona Watson, counselor at Pike County High School, was competent in what she does.  (Def. Ex. 18 Grantham 23.)

27.    Grantham worked for DHR for 15 years.  During that time she never had occasion to investigate a sexual abuse matter at Pike County High School. (Def. Ex. 18 Grantham 24-25.)

28.    No sexual abuse case occurred or was reported involving Pike County students.  (Def. Ex. 18 Grantham 25.)

Deposition of Sherry Shackleford, Brundidge Police<br>Assigned to Pike County High School

29.    Shackleford went to the band room at Pike County High School and got to know Coon well during the 2004-2005 school year.  (Def. Ex. 6 Shackleford 14.)

30.    Shackleford saw Coon smoking just off campus on Gilmore Street but never saw Coon smoking on campus.  (Def. Ex. 18 Grantham 16.)

31.    Robert McDaniel, Assistant Principal, was brought to Pike County High School to straighten out the school.  (Def. Ex. 18 Grantham 20.)

32.    Coon went to McDaniel constantly complaining about students.  Coon was an old time teacher expecting students to respect him.  (Def. Ex. 18 Grantham 21.)

33.    Shackleford never heard of any sexual allegations against Coon.  She never saw Coon acting out of the way with any child in any form.  (Def. Ex. 18 Grantham 23.)

34.    Shackleford never pictured Coon as an abuser or a molester because of the way he reacted towards students.  (Def. Ex. 18 Grantham 25-26.)

35.    Shackleford said there were no signs indicating that Coon was abusing any student.  She was shocked when he was accused.  (Def. Ex. 18 Grantham 29.)

<u>Deposition of Robert Bradbury,</u>
<u>Pike County Sheriff Department</u>

36.    Bradbury interviewed J.R. in connection with the criminal charges pending against Coon.  (Def. Ex. 13 Bradbury 8, 67; Pl. Ex. 34.)

37.    J.R. had previously been interviewed by Mona Watson. But the interview was badly done and not admissible in court.  (Def. Ex. 13 Bradbury 32, 90, 96.)

38.    J.R. said Coon never touched him inside his pants at school and they did not have oral sex.  (Def. Ex. 13 Bradbury 42-43.)

39.    Coon pled guilty to Enticing a Child for Immoral Purposes – three counts – and was sentenced to five years in the penitentiary:  one year in incarceration and four years on probation.  (Def. Ex. 13 Bradbury 54-55; Pl. Ex. 37.)

40.    No one at Pike County High School suspected that Coon was abusing J.R.  (Def. Ex. 13 Bradbury 81.)

41.    No one in the PCBE central office or Mark Bazzell had any suspicion that Coon was abusing J.R.  (Def. Ex. 13 Bradbury 81-82.)

42.    Mona Watson, a caring advocate for students, would have looked out for the welfare of J.R. while employed at Pike County High School.  (Def. Ex. 13 Bradbury 82.)

43.    Based on the investigation, there was no information that Coon had ever abused students at prior school systems where he worked.   (Def. Ex. 13 Bradbury 86.)

<u>Deposition of Mark Bazzell, Superintendent,</u>
<u>Pike County Board of Education</u>

44.    Bazzell was trained on sexual abuse and detecting signs of abuse. (Def. Ex. 3 Bazzell 16-17.)

45.    Pike County has over 600 special education students.  Some might be more vulnerable than others.  (Def. Ex. 3 Bazzell 22.)

46.    Pike County has provided its staff with training on sexual abuse. (Def. Ex. 3 Bazzell 26.)

47.    There was no information that J.R. was pulled out of class to go to the band room.  The teachers denied that that occurred.  (Def. Ex. 3 Bazzell 64.)

48.     Bazzell verified with J.R.'s teachers that this did not occur.  (Def. Ex. 3 Bazzell 65.)

49.     The sexual harassment policy is defined in Policy JCK.  (Pl. Ex. 5.)

50.     Bazzell addressed sexual abuse with teachers at orientation.  (Def. Ex. 3 Bazzell 87.)

51.     Bazzell provide training for administrators that included reporting requirements to DHR.  (Def. Ex. 3 Bazzell 89.)

52.     In January of 2005, Bazzell made a presentation on monitoring and reporting to DHR.  (Def. Ex. 3 Bazzell 91.)

53.     In February 2005, there was a program on recognizing sexual abuse. (Def. Ex. 3 Bazzell 92.)

54.     There was no evidence of any sexual misconduct by Coon in his previous positions of employment.   After Coon was employed by PCBE, the superintendent of Monroe County called asking permission to hire Coon.  (Def. Ex. 3 Bazzell 118.)

55.     When Troy City Police Officer Butch Phelps called on March 30, 2005, Phelps did not suggest that there was a sexual connotation to the information about Coon.  (Def. Ex. 3 Bazzell 137-138.)

56.     Bazzell immediately put Coon on administrative leave, and made Coon take a drug test.  (Def. Ex. 3 Bazzell 139-143.)

57.    Bazzell instructed his staff to investigate the information provided by Phelps, but to particularly interested in finding out who was referred to as Coon's butt buddy.  (Def. Ex. 3 Bazzell 145, 156.)

58.    No student knew who was referred to as Coon's butt buddy.  (Def. Ex. 3 Bazzell 148.)

59.    Bazzell reported back to the Troy City Police Department and the Brundidge Police Department concerning the investigation.  (Def. Ex. 3 Bazzell 178.)

60.    J.R.'s name never came up in the investigation.  (Def. Ex. 3 Bazzell 186.)

61.    Prior to Coon's retirement, J.R.'s name never came up as someone potentially being abused.  (Def. Ex. 3 Bazzell 186-187.)

62.    Bazzell believes he demonstrated a heightened sensitivity about the information given to him by Troy Police Officer Phelps.  (Def. Ex. 3 Bazzell 187.)

<u>ARGUMENT</u>

**I.    42 U.S.C. § 1983**

Plaintiffs claim that the Defendants should be liable for Charles Coon's sexual abuse pursuant to 42 U.S.C. § 1983.

The District can be held liable for a constitutional violation under § 1983 if the violation was committed pursuant to an official "policy or custom."  *See*

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *M.Y. v. Special Sch. Dist. #1*, 519 F.Supp.2d 995 (D. Minn. 2007) (copy attached as Ex. 25.)    In *M.Y.* at 519 F.Supp.2d 1003-1004, the court explained what process should be followed to address a § 1983 claim in a case involving sexual abuse of a special education student:

> 1.    The first task in applying *Monell* is to identify what the government body's policy is.
>
> 2.    The second task is to determine whether the policy is unconstitutional.

J.R. argues that the Defendant Board maintains a custom or policy of denying students a safe environment free of sexual abuse because the District has failed to develop policies and procedures to prevent what Coon did; and by not informing school officials about the vulnerability of special education students.

Addressing the first task – whether the District has a policy or custom which violated J.R.'s constitutional right – the District demonstrated that it has policies to prohibit sexual abuse and it provided systematic training for the faculty to recognize and report sexual abuse.  (Student Code of Conduct Pl. Ex. 2, p. 11-12; Board Policies JGFB, GBREA, JCK, JCAC, JCE Pl. Ex. 5, pp. 1-16.)

Superintendent Mark Bazzell, Special Education Coordinator Karen Berry, and Mona Watson testified in their depositions concerning in-service programs to address sexual abuse, identifying students who are sexually abused, and reporting

suspicions of sexual abuse. (Def. Ex. 2 Bazzell Aff. 2-3; Def. Ex. 3 Bazzell Depo. 1-6, 74-77, 87, 89, 91, 92, 97; Def. 4 Watson Aff. 1-3; Ex. 5 Watson Depo. 8, 10, 12, 23, 24, 25, 27; Def. Ex. 14 Berry Depo. 10, 24, 25, 26, 30, 32, 33, 44, 47, 48, 49.)

In addition, each administrator – Superintendent Bazzell, Principals Casey and Pyron, and Assistant Principal McDaniel – testified that suspicion of child abuse had to be reported to law enforcement agencies as mandated by Ala. Code § 26-14-3. (Def. Ex. 2 Bazzell Aff. 1; Def. Ex. 7 McDaniel Aff. 2; Def. Ex. 9 Casey Aff. 1; Def. Ex. 11 Pyron Aff. 1.)

Stated otherwise, not only did Defendant Board have sexual abuse policies for faculty and students, but the administrators all knew about and respected the statutory procedure mandated by Ala. Code § 26-14-3.

Plaintiffs quibble about the effectiveness of the policies. Plaintiffs are unable, however, to show an absence of policy or an absence of knowledge about the State mandatory reporting requirement. Nor are Plaintiffs able to show a policy, custom or practice which enabled Coon to sexually abuse J.R.

Neither Pike County High School nor the PCBE has any history of widespread sexual abuse.

On the contrary, Lucia Grantham testified that during her 15 years of working with the Department of Human Resources in Pike County she never had a

case of sexual abuse at Pike County High School or for the Pike County School System.  (Def. Ex. 18 Grantham 24-25.)

Similarly, Mona Watson testified that she had studied the statistics for Bullock, Pike and Coffee counties and there is no indication that any certain group of children was more likely to be abused.  (Def. Ex. 5 Watson 12.)

In *Davis v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000), the Eleventh Circuit Court of Appeals held that a plaintiff has the burden of showing a policy "that caused a deprivation of federal rights."  The court said at 1375:

> Plaintiffs claim that the District Court erred by granting summary judgment in finding DCSD and Duncan not liable under § 1983 for Mency's misconduct.
>
> A plaintiff seeking to impose liability on a municipality (school district) under § 1983 must identify a municipal "policy" or "custom" that caused a deprivation of federal rights.

(Emphasis supplied.)

In this case, Plaintiffs have failed totally to identify a "policy" or "custom" that caused a constitutional deprivation of J.R.'s rights.

Plaintiffs reference the Eleventh Circuit Court of Appeals opinion in *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).[11]  *Cottone* involved misconduct by

---

[11] The decision of the Eleventh Circuit in *Cottone* also addressed the defense of governmental immunity which these Defendants assert as a defense.  The court said at 1357 as follows:  "The doctrine of qualified immunity completely protects governmental officials performing

guards at a jail.   The Eleventh Circuit Court of Appeals discussed supervisory liability at 1360 and stated that the standard by which a supervisor is held liable in his individual capacity for actions of a subordinate is extremely rigorous.   The court said that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability unless they participated in the misconduct or where there is such a close causal connection between the actions of the supervisory official and the alleged constitutional deprivation.   The court explained:

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so.   . . . Alternatively, where the causal connection may be established where a supervisor's "custom or policy . . . results in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."   <u>The standard by which a supervisor is held liable in his individual capacity for actions of a subordinate is extremely rigorous</u>.

326 F.3d 1360.  (Emphasis added.)

In *Cottone* summary judgment was granted for the supervisors because plaintiff did not allege any affirmative custom or policy implemented by the supervisors that caused or enabled the misconduct.   The court said further, at 1362, that plaintiffs did not allege any specific facts at all connecting the supervisors with the alleged

---

discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Plaintiffs fail to produce any such evidence concerning the Defendants in this case.

misconduct.  In this case, Plaintiffs are unable and have not alleged any specific facts that connect members of the Pike County Board of Education, Superintendent Bazzell, Principals Casey and Pyron, or Assistant Principal McDaniel with Coon's conduct.  Nor have Plaintiffs introduced any evidence suggesting a history of sexual abuse at Pike County High School or a record of prior sexual abuse by Coon in his previous employment.  The record is absolutely devoid of any information that would put these Defendants on notice to be suspicious of Coon's unconstitutional conduct.

In that Plaintiffs have failed to produce a policy, a custom or a history that contributed to Coon's criminal conduct, the Defendants' Motion for Summary Judgment regarding Plaintiffs' § 1983 claim should be granted.

## II.    § 504

In order to state a claim under § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, a plaintiff must show that he or she was discriminated against "solely by reason of his or her handicap."  29 U.S.C. § 794.  Either bad faith or gross misjudgment must be shown before a § 504 violation can be made out. *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982); *B.R. v. District of Columbia*, 524 F.Supp.2d 35, 41 (D.D.C. 2007).  In *Monahan* at 687 F.2d 1170-71, the court held that liability will not be imposed as long as the "state officials have

exercised professional judgment in such a way as not to depart grossly from accepted standards among educated professionals."

In this case, Plaintiffs seek monetary damages and injunctive relief. Plaintiffs assert that the District violated § 504 by subjecting J.R. to a hostile or offensive learning environment; by not developing policies and procedures reasonably required to protect J.R. from sexual abuse; and by failing to train, investigate and report sexual misconduct given J.R.'s disability. Plaintiffs further assert that the Defendants did not develop specific policies and procedures that were reasonably designed to protect the Plaintiff J.R.'s personal security in light of his disability.[12] While Plaintiffs assert that Defendants have discriminated against J.R. because of his disability, Plaintiffs fail to explain the causal connection between these abstract assertions and Coon's misconduct.

Regarding the assertion of a hostile learning environment, under the provisions of IDEA, a "placement" is an issue for the IEP committee. There is no evidence that Plaintiffs ever complained about J.R.'s placement for implementation of his Individualized Education Program. There is no evidence that his

---

[12] The Pike County Board had policies addressing sexual abuse in the faculty handbook and in the student code of conduct. Plaintiffs argue that these were not sufficient because they were not tailored to meet the specific needs of J.R. As previously stated, a specific behavior management program would have been the function of the IEP committee. Superintendent Bazzell testified that Pike County has over 600 special education students in its system. (Def. Ex. 3 Bazzell 22.) Plaintiffs suggest in their argument that the District has the obligation to design policies specifically tailored for each of its special ed students and the failure to do that constitutes deliberate indifference. Plaintiffs offer no judicial support for such an unreasonable burden.

"placement" was improper because there was no notice that he was being deprived of any education benefit or program. The abuse by Coon was not known by any school official until after Coon retired. After the abuse came to light, the District assisted J.R. in transferring to the Troy City School System. J.R. was being served pursuant to an IEP. (Def. Ex. 14 Berry 12-16.)

There is no evidence that Defendants exercised "bad faith or gross misjudgment" regarding J.R.'s placement. *See M.Y. v. Special Sch. Dist. #1*, 519 F.Supp.2d 995, 1001 (D. Minn. 2007) (severe and profoundly handicapped student sexually abused by a bus driver; school district's motion for summary judgment granted.) (Copy attached as Exhibit 25.)

Regarding Plaintiffs' assertion that the District discriminated against J.R. by not developing policies and procedures to protect J.R., the District has the obligation to develop policies for the benefit of all students. If J.R. had individualized needs such as a need for a behavior management plan, the IEP committee has the responsibility to craft that component of his special education program. That would be a responsibility under the provisions of IDEA. No need was perceived that J.R. needed a behavior management plan. Mrs. Reed testified that she thought that the school system was providing J.R. with an appropriate education. (Def. Ex. 15 Reed 89.) The District and Mrs. Reed convened IEP meetings on May 13, 2005 and May 25, 2005 to review various aspects of J.R.'s

program.  At these meetings toward the very end of the year, Mrs. Reed still had no concern regarding Coon and raised no complaint about Coon at these meetings. (Def. Ex. 15 Reed 90-93.)   There is no evidence that anyone – Plaintiffs or otherwise – recommended a behavior management plan for J.R.  What happened to J.R. happened to Blake Faulkner who is not a special education student:  Coon sexually abused him.  Mona Watson, head of the Pike County Child Advocacy Center, testified that regular students were often as vulnerable as special education students. (Def. Ex. 8 Watson 10).

It should also be repeated for emphasis that each of the named Defendants testified that the state statute governed how sexual abuse complaints were to be processed.  Ala. Code § 26-14-3 requires school officials to notify law enforcement officials if there is a suspicion of sexual abuse.  Superintendent Bazzell and each of the other Defendants state in their affidavits that they knew to call DHR or law enforcement officials if they had any suspicion of sexual abuse.  There is no evidence to suggest that the Defendants would have been less likely to report sexual abuse of J.R. because he is a special ed student than they would regular ed students. There is no evidence of discrimination because of J.R.'s disability.

Stated otherwise, the state statute constitutes the overarching policy requiring suspicion of sexual abuse to be reported.  There is no evidence that Coon abused J.R. because no school official knew how to report sexual abuse.  Karen

Berry testified that she trained the faculty at BBST in-service to recognize symptoms of abuse. (Def. Ex. 14 Berry 30.)

In this case, no one – not even J.R.'s mother who spent so much time with Coon as band booster president and with Coon as a welcome visitor in her home – suspected Coon of abusing J.R.  The impediment was not Board policy, nor Board training, but the fact that no one had notice that the abuse was occurring.

The complaints referenced by Plaintiffs as providing a basis for "concern" did not have a sexual context or connotation:  grades, discipline, smoking, cell phone, transportation.  There is no evidence that anyone prior to July of 2005 raised any suspicion about Coon or shared any suspicion with school officials that Coon might be sexually abusing J.R. or any other student.

With regard to the stated concerns, school officials addressed each of these matters using their professional judgment to deal with each incident given the known facts.  To illustrate, one example would be the transportation of J.R. in Coon's vehicle.  In a rural school system, coaches and band directors frequently drive students home from practice.  As Mrs. Reed said, with regard to J.R., she gave Coon permission to drive him home after practice.  It was a convenience for her.  If Coon was reported to be driving J.R. in his vehicle, when Mrs. Reed had given him permission to do so, a report that Coon was driving students in his private vehicle did not have sexual implications.  Nor does the use of a cell phone

where the father lives in Montgomery and has given the student permission to use Coon's cell phone.

Taken in context each of the "complaints" referenced by Plaintiffs was handled in reasonable fashion. There is no plausible evidence that Defendants used "bad faith or gross misjudgment." To the contrary, Defendants in this case did what the court approved in *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982). There the court held that liability will not be imposed as long as "state officials have exercised professional judgment in such a way as not to depart grossly from accepted standards among educational professionals."

In *M.Y. v. Special Sch. Dist. #1* at 519 F.Supp.2d 1003, the court granted summary judgment in favor of the school district, denying plaintiff's § 504 argument. The court explained:

> In her complaint, M.Y. stated that the District acted "intentionally and with deliberate indifference to [her] rights as a student with a disability, including being denied her educational and non-academic benefits and services by reason of her disability in violation § 504.

> However, M.Y. did not address the District's argument in opposition to her § 504 claim. Moreover, she has not provided any evidence showing that the District discriminated against her because of her disability, or that the District acted with bad faith or gross misjudgment.

> Because M.Y. has presented no evidence to establish a genuine issue of material fact, the court finds that summary judgment as to M.Y.'s § 504 and MHRA claims is warranted.

As a matter of law, Defendants respectfully submit that they are entitled to judgment regarding Plaintiffs' § 504 claims. J.R. is a special education student. But there is no demonstrated causal connection between the Board's policies, or the training of school officials that enabled Coon to engage in his criminal conduct. A reading of the affidavits of each of the named Defendants provides convincing, unrebutted evidence of their professional conduct.

### III.    Title IX

Under Title IX, 20 U.S.C. § 1681, a school district may be liable for damages arising out of the District's own misconduct. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L.Ed.2d 839 (1999). Under Title IX, a school district may be liable for the sexual abuse of a student if the plaintiff demonstrates:

> (1)    A school district official with authority to institute corrective action,

> (2)    has actual notice of, and

> (3)    is deliberately indifferent to student abuse.

*Davis*, 526 U.S. 642. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 304, 118 S. Ct. 1989, 141 L.Ed.2d 277 (1998).

The Supreme Court has expressly rejected the use of "principles of respondeat superior or constructive notice" for imposing liability on a school district under Title IX. *Gebser*, 524 U.S. 285.

Defendants submit that they are entitled to judgment as a matter of law on Plaintiffs' Title IX claim because the school district did not have actual notice of, and was not deliberately indifferent to, the teacher's misconduct.

In *Gebser*, the Supreme Court determined that damages will not lie under Title IX unless school officials had actual knowledge of the abuse, *Gebser* at 524 U.S. 289, and the school officials act with deliberate indifference with regard to that abuse:

> The response must amount to deliberate indifference to discrimination. . . . The premise, in other words, is an official decision by the recipient not to remedy the violation.

*Id.*   In *Gebser*, the Court found that the school district had actual notice of a teacher's inappropriate suggestive comments made during class but concluded that this information "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student."   *Id.* 291. Defendants respectfully submit that in similar fashion to *Gebser* this Court should conclude that the information of concerns alleged by the Plaintiffs "were plainly insufficient" to alert the Defendants to the possibility that Coon was sexually abusing J.R.   The reports involved (1) transportation of a student in a private vehicle where the parent had given permission for him to do so; (2) smoking on or near campus; (3) choking a student in an incident where the parents and the District reached an accord and satisfaction; (4) letting a student use a cell phone

where the parent had given permission for the student to do so; and (5) information given by Officer Butch Phelps to Superintendent Bazzell about smoking and the presence of marijuana.

Given the standard established by the United States Supreme Court in *Gebser*, this Court should find as a matter of law that the concerns alleged after the fact by Plaintiffs were clearly insufficient to put school officials on notice. If Mrs. Reed had no notice or concern about Coon notwithstanding his social relationship with the family over an extended period of time, together with her observation of Coon at band practices, band trips, and band activities, then as a matter of law the Court should conclude the Board did not have notice and did not have sufficient information to put the Board members on notice of sexual abuse.

As previously stated, Plaintiffs do not contend that the Pike County Board of Education or any school official knew that Coon was sexually abusing J.R. until he plead guilty in the summer of 2005.

Plaintiffs are unable to show that Pike County High School or the Pike County Board of Education created and nurtured an environment conducive to sexual abuse. Testimony on record is that there have been no previous incidents of student sexual abuse at Pike County High School or for the Pike County Board of Education.

The *Gebser* opinion of the Supreme Court establishes as a matter of law the high bar that must be used in assessing whether a school district should be held liable under Title IX.  In this case, Plaintiffs have not discharged their burden of proof to meet the United States Supreme Court's standard as set forth in *Gebser*.  For that reason, Defendants are entitled to summary judgment as a matter of law regarding Plaintiffs' Title IX claim.

### IV.  Negligence/Willful and Wanton Conduct

Plaintiffs claim that Defendants were negligent in failing to report suspicion of child abuse to DHR or law enforcement officials after parent Polly King complained in January 2005.  King testified in her deposition as follows:

> Q.    Okay.  Now, it's my understanding that at some point you had some concerns about Mr. Coon – Charles Coon, I think his name is – and may have brought these concerns to the attention some official.  And the purpose of this testimony is just to get the history of what happened.  That's all.
>
> A.    Not anything on sexual abuse, I didn't.  He offered my son a Marijuana cigarette on the ride home from a football game one night.  And I went to the school and complained about that.  That's the only time that I have had any complaint about anything – with him.

(Def. Ex. 17, King  11.)

Ms. King did not suggest that Coon was sexually abusing any student.  Moreover, she made no reference to J.R. in connection with her son's band grade.

Alabama case law is well developed that school officials working in the line and scope of their authority enjoy governmental immunity. *Walton v. Montgomery*

*County Bd. of Educ.*, 371 F.Supp.2d 1318, 1324 (negligent training and supervision; school officials entitled to governmental immunity); *W.L.O. v. Smith*, 585 So. 2d 22 (Ala. 1999) (summary judgment granted in favor of school officials regarding sexual abuse); *C.B. v. Bobo*, 659 So. 2d 98, 101 (1995) (allegations of sexual abuse; doctrine of discretionary immunity protected board members, superintendent, and principal from liability under state law).

Defendants respectfully submit that they are entitled to summary judgment with regard to Plaintiffs' negligence claim as a matter of law.  Defendants are likewise entitled to summary judgment regarding Plaintiffs' baseless assertion of wanton and willful misconduct.

### V.    Equal Protection

Plaintiffs allege disparate treatment of J.R. because of the sexual abuse by Coon in violation of his Equal Protection rights under the Fourteenth Amendment.

In *Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999), the Eleventh Circuit considered an Equal Protection claim.  A teacher sexually abused a high school student.   The student sued the superintendent in his individual and official capacities for violating her Fourteenth Amendment right to equal protection by failing to stop the sexual abuse.

As in the present case, the superintendent in *Hartley* had no reason to suspect misconduct by the teacher.  After the misconduct – after the sexual abuse

had occurred, and the matter came to the superintendent's attention – the student did not suffer any further sexual abuse. As a consequence, the Eleventh Circuit ruled that the superintendent did not violate the student's Equal Protection rights:

> In the absence of any evidence of injury to Miss Hartley after Parnell learned of her allegations, we hold that Parnell did not deprive Miss Hartley of her Fourteenth Amendment right to equal protection.

193 F.3d 1269.

In *Rost v. Steamboat Springs Region #2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008), a recent case, a sexually abused student sued the school district alleging violation of Equal Protection.  Plaintiff argued that the district had an established custom of ignoring sexual harassment by not enforcing its policy.  The court granted summary judgment concluding that two specific incidents of sexual harassment do not create a "custom" or "practice" of violating the constitutional rights of the student. The Tenth Circuit rejected plaintiff's claim, explaining its decision at 511 F.3d 1125:

> Ms. Rost does not contend that the district had an official policy or that a decision was made by an official with final policymaking authority. She only contends that the district had a custom of acquiescing to student sexual harassment.  Ms. Rost's argument appears to fit within the case law analyzing the custom of failure to receive, investigate, or act on complaints of constitutional violations.
>
> Under this precedent, a plaintiff must prove (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policymaking officials after notice of the conduct; and (3) a resulting injury to the plaintiff.  . . .

The evidence does not show that there was a widespread and persistent practice of failing to respond to student sexual harassment. At best, the evidence shows that the district was aware of several discrete problems and was working to remedy them – which only raises an issue of district's negligence, not its deliberate indifference. The attempted remedial measures suggest the district was not deliberate indifferent to or tacitly approving of the misconduct.  *See Gates*, 996 F.2d at 1041-42.

Ms. Rost also claims that the district consistently failed to follow its sexual harassment policy but does not provide evidence of occurrences where the district failed in this regard.

Generalized allegations are insufficient to create an issue of material fact at the summary judgment stage.  Fed. R. Civ. P. 56(e).  Therefore the evidence is insufficient to show that the district had a custom of acquiescing to sexual harassment, and the district court's grant of summary judgment on Ms. Rost's equal protection claim is affirmed.

In the present case, there is no evidence of widespread and persistent sexual abuse.  Lucia Grantham testified that during her 15 years with DHR she never had occasion to investigate a sexual abuse matter at Pike County High School. Moreover, she said that no sexual abuse case was reported involving the Pike County schools.  (Def. Ex. 18 Grantham 24-25.)

Defendants respectfully submit that Plaintiffs have not offered proof that Defendant Board's policies are discriminatory in application or that widespread abuse has occurred.  Accordingly, Defendants respectfully submit that the Court should enter summary judgment with regard to Plaintiffs' Equal Protection claim.

CONCLUSION

As the Court considers the applicable law in this case, the Court will have one overarching undisputed fact before it:  no Defendant had knowledge of the sexual abuse by Coon until July of 2005, after Coon had retired.  Plaintiffs stipulate this fact.

A second important fact that is undisputed is that J.R.'s name never surfaced at any time in any report, complaint or investigation.

To hold these Defendants liable for conduct about which they had no knowledge – criminal conduct by Coon – would be tantamount to imposing liability on four innocent professional educators for the criminal conduct of Coon.

Justice O'Connor warned that this should not happen:  A school district and its supervisors should be liable only for their own misconduct, or manifested indifference to known or widespread misconduct.  In this case, Plaintiffs have not shown a policy, practice or custom that caused or fostered what Coon did; Plaintiffs have not shown that the named Defendants contributed or condoned in any way what Coon did to J.R.; Plaintiffs have not shown that the policies in place created an environment tolerant of sexual abuse (no prior cases); and Plaintiffs have not shown that Defendants ignored facts about which a reasonable person should have suspected abusive conduct.

Coon was a career educator with no history of any prior misconduct. Plaintiffs who want money from the school system welcomed him, spent time with him, and had no reason to suspect him. Coon abused their trust by his criminal conduct. Yet that abuse by Coon does not exempt Plaintiffs from U.S. Supreme Court rulings that the doctrine of respondeat superior does not apply in cases where the District had no actual knowledge of the criminal conduct of the subordinate employee.

The Defendants ask the Court to enter summary judgment on all counts in favor of the Defendants for two primary reasons. In the first place, these Defendants deserve to be found not guilty of the distorted accusations brought against them. Secondly, the Pike County School District should not have to put at substantial risk education money for damages and attorney fees when the law entitles the Board to prevail.

Respectfully submitted,


s/Donald B. Sweeney, Jr.
Donald B. Sweeney, Jr.

<u>OF COUNSEL</u>

Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2008, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system which will send notification
of such filing to the following:

Deanie Clark Allen, Esq.
Susan Shirock DePaola, Esq.

and I hereby certify that I have mailed by United States Postal Service the
document to the following non-CM/ECF participants:

Mr. Charles L. Coon
308 Country Club Drive
P.O. Box 201
Greenville, AL  36037

s/ Donald B. Sweeney, Jr.