## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JR, a minor, by his mother and father EAR and TMR, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NUMBER: 2:06-cv-1120-MEF |
| PIKE COUNTY BOARD OF EDUCATION, et al., | ) ) ) | |
| Defendants. | ) | |

## SUGGESTION OF RECENT PERTINENT CASES

Comes now Defendants, by and through the undersigned counsel of record, and hereby submit the following recent pertinent cases:

A recent Alabama case discusses in pertinent fashion issues asserted by Plaintiffs in this case. In Count II of the complaint, Plaintiffs allege constitutional violation regarding personnel that include the following:

> Count II: Constitution violation regarding the minor student who was sexually abused for either (1) not having policies relating to "hiring, training and supervision . . . and monitoring complaints or (2) having grossly inefficient customs or policies.

(Copy of Amended Complaint attached as Appendix A.)

In *Trottman v. Russell County Bd. of Educ.*, 965 So. 2d 780, 782-783 (Ala. 2007) (copy attached as Appendix B), the Alabama Supreme Court recently considered similar allegations of negligence and wantonness in a student sexual

abuse case.  Plaintiffs sued the Board of Education, principal and instructional assistant regarding negligent supervision of students, and negligent supervision of personnel.

Justice Stuart, writing for the Court, determined that Defendants were entitled to State-agent immunity on the negligent supervision of personnel claims because the act of hiring, training and supervision "fell within the discretionary function of exercising professional judgment in supervising personnel and formulating policy."  Judge Stuart predicated the Court's finding on the Court's decision in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000)] (in pertinent part):

> In [*Ex parte*] *Cranman* [792 So. 2d 392 (Ala. 2000), this Court restated the doctrine of State-agent immunity as follows:
>
> "'A State agent <u>shall</u> be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1)    formulating plans, policies or designs; or
>
> (2)    exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
>> (a)    making administrative adjudications;  . . .
>>
>> (d)    hiring, firing, transferring, assigning, or <u>supervising personnel</u>; or
>
> (3)    discharging duties imposed on a department or agency by statute . . .; or

     (5)    exercising judgment in the discharge of duties imposed by statute, rule or regulation in . . . counseling . . . persons of unsound mind or <u>educating students</u>.

Defendants respectfully submit that Defendants are entitled to judgment as a matter of law and the undisputed facts of record. There is no evidence of a custom or practice by these Defendants that would establish a nexus between the criminal misconduct of Charles Coon, on the one hand, and the named Defendants (Board, superintendent or administrators). The evidence of record reveals no history of sexual abuse, sexual misconduct in any way similar to the alleged conduct of Charles Coon.[1]  The evidence shows there has been no history of sexual misconduct by employees of the Pike County School System in the last 15 years. (*See* Granthum Dep. 199-200.)

## Rehabilitation Act

Plaintiffs seek monetary damages under the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. Plaintiffs based their claim on (1) failure of Defendants to address issues in planning J.R.'s school program. (Note: These would be IDEA issues. Plaintiff J.R. had IEPs that were

---

[1] In Count V and Count VI, Plaintiffs alleged negligence and wanton misconduct in that Defendants did not report suspected abuse relating to Plaintiff to DHR. There is no evidence that anyone suspected Plaintiff was being abused until July when Charles Coon was no longer employed by Defendant Board and the law enforcement officials arrested Charles Coon. The report in April of 2005 about smoking marijuana was reported by law enforcement to Superintendent Bazzell. In compliance with Ala. Code § 26-14-3 (copy attached Appendix E) Superintendent Bazzell discussed the allegations with the law enforcement officer and then shared the results of his investigation with the Troy and Brundidge police departments.

signed by Plaintiff's mother and school officials in good faith); (2) failure to address issues relating to Plaintiff J.R. in hiring, training and supervising personnel. (Note: There is no evidence that Charles Coon had any record of misconduct in any previous school. No evidence of negligence in hiring Charles Coon; no criminal record; nothing but good recommendations. When the one issue by a law enforcement officer was reported to Superintendent Bazzell in April 2005, he immediately suspended Charles Coon pending an investigation.) Against this backdrop of immediate action by Dr. Bazzell, a recent District of Columbia case is pertinent: No Section 504 cause of action with evidence of egregious misconduct constituting bad faith.

In the 2008 case, *Robinson v. District of Columbia*, 535 F. Supp. 2d 38, 41-42 (D.D.C. 2008) (copy attached as Appendix C), a special education case, the Court granted defendants' motion to dismiss Section 1983 claims and Section 504 claims. Concerning the Section 504 claims, the Court provided the following explanation:

> Section 504 prohibits programs and entities that receive federal funding from denying benefits to, or otherwise discriminating against, a person "solely by reason of that individual's handicap." 29 U.S.C. § 794(a).

> As this Court has previously noted, "this statute seems an odd fit for a setting in which local governments are charged with providing specialized education for disabled students." *T.T. v. District of Columbia*, 2007 WL 2111032 at 10.

> Recognizing this incongruity, courts have determined that "in order to show a violation of the Rehabilitation Act, something more than a mere failure to provide the 'free appropriate education' . . . must be shown. . . ."

> Specifically, <u>plaintiffs must show either bad faith or gross misjudgment</u>, on the part of the government defendants.

(Emphasis added). *See also*: *B.R. Simpson v. District of Columbia*, 524 F. Supp. 2d 35, 41-42 (D.D.C. 2007) (no alleged facts demonstrating that "exceptional circumstances rendered the defendants' conduct "persistently egregious" as required by Section 1983; nor facts alleged sketching a custom or practice of the defendants providing the "moving force behind the violations." [2] (Copy attached as Appendix D.)

Charles Coon, allegedly abused students – not just J.R. – by engaging in criminal conduct toward students. Not handicapped students – i.e., no evidence supports the contention that what happened to Plaintiff J.R. was a direct result of some deprivation of his rights as a disabled student, or that the abuse occurred only against him because of his disability.

Moreover, there is no evidence of bad faith – "persistent, egregious conduct" – by Superintendent Bazzell or the principals or assistant principal. A reading of their unrebutted affidavits demonstrate good faith; not bad faith.

---

[2] What Charles Coon is alleged to have done was predatory. But Plaintiff EAR testified in her deposition that he abused her other son Joseph at their home and another student Blake Faulkner. (EAR Dep. 50-53.) There is no evidence that this alleged criminal conduct was a function of the students' handicap.

## CONCLUSION

Putting these named professional educators through an extended trial based on criminal conduct of Charles Coon, criminal conduct about which not one of the Defendants had any knowledge, would constitute a misapplication of the law. Charles Coon is a criminal. His conduct is reprehensible. But no legal basis exists to put Mark Bazzell, Terry Casey, Buddy Pyron or Robert McDaniel through the ordeal of an extended trial. J.R. was not denied any program or activity by these named Defendants because of his disability. When a complaint was brought to the attention of Dr. Bazzell in April of 2005, J.R. was not mentioned by anyone – his name never came up. What did happen was a good faith investigation where Dr. Bazzell placed Charles Coon on suspended status until the investigation was completed. After the investigation was completed, Dr. Bazzell admonished Charles Coon in writing and stated how serious were the allegations about him. There is no evidence that any abuse of J.R. occurred after the good faith investigation instituted by Dr. Bazzell.

In short, there is no evidence of bad faith or deliberate, intentional discrimination by these Defendants against J.R.

Respectfully submitted,

s/Donald B. Sweeney, Jr.

Donald B. Sweeney, Jr.
One of the Attorneys for Named
Defendants

OF COUNSEL

Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Deanie Clark Allen, Esq.
Susan Shirock DePaola, Esq.

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Mr. Charles L. Coon
308 Country Club Drive
P.O. Box 201
Greenville, AL  36037

s/Donald B. Sweeney, Jr.
Donald B. Sweeney, Jr.

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JR a Minor, by his mother and father | * | |
| EAR and TMR | * | |
| **Plaintiffs** | * | |
| v. | * | |
| | * | |
| **PIKE COUNTY BOARD OF** | * | PLAINTIFF DEMANDS A JURY |
| **EDUCATION,** | * | |
| **SAMUEL MARK BAZZELL** | * | **TRIAL ON ALL COUNTS** |
| **Individually and in his official capacity** | * | |
| **as Superintendent of Schools;** | * | |
| **TERRY CASEY, individually and in** | * | |
| **his official capacity as Principal** | * | |
| **of Pike County High School,** | * | **Case No. CV 2:06-cv-1120** |
| **BUDDY PYRON, individually and in** | * | |
| **his official capacity as** | * | |
| **Principal of Pike County High School,** | * | |
| **ROBERT MCDANIEL, individually** | * | |
| **and in his official capacity as Assistant/** | * | |
| **Principal of Pike County High School;** | * | |
| **CHARLES LESLIE COON, individually** | * | |
| **and in his official capacity as a teacher** | * | |
| **at Pike County High School** | * | |
| **DOE DEFENDANTS 1-5 being those** | * | |
| **persons legally responsible for providing** | * | |
| **for the safety of special education** | * | |
| **students and for conducting** | * | |
| **investigations of complaints** | * | |
| **relating to the physical safety of** | * | |
| **students and for establishing policies** | * | |
| **and procedures to protect said students.** | * | |
| **Defendants** | * | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
Parties

1. Plaintiff JR is a minor and is the son of EAR and TMR who sue on his behalf as his parents and legal guardians. JR is a special education student and is mentally retarded. He is a resident of Pike County, Alabama and at all times relevant hereto was enrolled in the Pike County School system.

2. Plaintiff EAR is the mother of JR. She is an adult resident of Pike County, Alabama and at all times relevant hereto she has been one of the custodial parents of JR.

3. Plaintiff TMR is the father of JR. He is an adult resident of Pike County, Alabama and at all times relevant hereto he has been one of the custodial parents of JR.

4. Defendant Pike County Board of Education (hereinafter the "Board") is now, and has been at all times material to this action, a local board of education located within the Northern Division of the Middle District of Alabama. The Board has the underlying responsibility for hiring, training and supervision of programs, activities and personnel;   development and implementation of policies and procedures to address personal privacy and security of special education students;   and,   for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security.

5. Defendant Mark Bazzell (hereinafter "Bazzell") is an adult and is an employee of the Pike County Board of Education, serving in the capacity of Superintendent of Education. In his capacity as Superintendent he is the agent of the Board responsible for  hiring, training and supervision of programs, activities and personnel;   development and implementation of policies and procedures to address personal privacy and security of special education students;   and,   for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security. He is sued in his individual and his official capacity.

6. Defendant Terry Casey (hereinafter "Casey") is an adult and at certain times material hereto was an employee of the Board, serving in the capacity of Principal of the High School. Casey was at all times material hereto responsible for hiring, training and supervision of programs, activities and personnel; development and implementation of policies and procedures to address personal privacy and security of special education students;   and,   for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security. He is sued in his individual and his official capacity.

7. Defendant Buddy Pyron (hereinafter "Pyron") is an adult and at certain times material hereto was an employee of the Board, serving in the capacity of Principal of the High School.   Pyron was at all times material hereto responsible for  hiring, training and supervision of programs, activities and personnel;   development and implementation of policies and procedures to address personal privacy and security of special education students;   and,   for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security.   He is sued in his individual and his official capacity.

8. Defendant Robert McDaniel (hereinafter "McDaniel") is an adult and at certain times material hereto was an employee of the Board, serving in the capacity of Assistant Principal or Principal of the High School. McDaniel was at all times material hereto responsible for hiring, training and supervision of programs, activities and personnel; development and implementation of policies and procedures to address personal privacy and security of special education students; and, for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security. He is sued in his individual and his official capacity.

9. Defendant Charles Leslie Coon (hereinafter "Coon") is an adult and was, at all times material hereto, an employee of the Board. He was a teacher of the plaintiff JR and was at all times hereto responsible for oversight, supervision and personal safety and security of this student while he was in his custody and/or on school grounds. Coon is sued in his individual and official capacity.

10. Upon information and belief, Coon is currently incarcerated and has plead guilty to sexual abuse of Plaintiff JR.

11. Doe Defendants 1-5 are those persons legally responsible for hiring, training and supervision of programs, activities and personnel; development and implementation of policies and procedures to address personal privacy and security of special education students; and, for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security.

## Jurisdiction & Venue

12. Jurisdiction in this matter is based on The Rehabilitation Act of 1973, 29 U.S.C. §794 (hereinafter 504); 42 U.S.C. §1983; 42 U.S.C. §1988. The United States Constitution; 28 U.S.C. §1331; 28 U.S.C. §1367 and Title IX of the Education Amendments of 1972 20 U.S.C. §1681(a).

13. Venue is appropriate under 28 U.S.C. §1391(b).

## Facts

14. Plaintiff JR is a minor child and is a qualified individual with a disability as defined by the following statutes: the Alabama Exceptional Children's Education Act, Individuals with Disabilities Education Improvement Act and Section 504 of the Rehabilitation Act.

15. JR has been enrolled in the Pike County school system since approximately 1994 and has been classified as a special education student since approximately 1996. JR's area of disability is mental retardation.

16. The Board is a governmental entity for the purposes of 42 U.S.C. §1983 and §1988. The Board is required to provide special education and related services to students with disabilities within its jurisdiction pursuant to Section 504.

17. The Board is a recipient of Federal financial assistance to aid in the provision of special education and other educational services to students with disabilities.

18. Defendant Bazzell is an employee of the Board of Education, serving in the capacity of Superintendent of Education.

19. Defendant Casey at certain times material hereto was an employee of the Board, serving in the capacity of Principal of the High School.

20. Defendant Pyron at certain times material hereto was an employee of the Board, serving in the capacity of Principal of the High School

21. Defendant McDaniel at certain times material hereto was an employee of the Board, serving in the capacity of Assistant Principal of the High School.

22. Defendant Coon was, at all times material hereto, an employee of the Board and acting in his official capacity. He was a teacher of the Plaintiff JR and was at all times hereto responsible for oversight, supervision and personal safety and security of this student while he was in his custody and/or on school grounds. Coon was also responsible for implementing policies and procedures for the system as they related to the students including attending to the safety and security of said students.

23. Doe Defendants 1-5 are those persons designated by the Board with the responsibility for hiring, training and supervision of programs, activities and personnel; development and implementation of policies and procedures to address personal privacy and security of special education students; and, for monitoring and investigation of sexually inappropriate conduct and/or violations of personal privacy and security. .

24. At all times material hereto, Defendants individually and jointly acted under color of state law and all Defendants were agents, servants or employee of the Defendant Board.

25. Beginning in the academic year 2004-2005 the student's personal privacy and security were repeatedly violated by Defendant Coon. Said violations consisted of establishing and maintaining sexual contact with the student; using his authority as a teacher to intimidate and/or coerce the student to engage in sexually inappropriate conduct, taking the student off campus in a personal vehicle and using school property and/or school procedures to conduct said activities.

26. Defendants Board, Bazzell, Casey, Pyron and McDaniel and John Doe Defendants 1-5 were responsible for defelopment and implementation of

policies and procedures to address personal privacy and security of special education students.

27. Defendants Board, Bazzell, Casey, Pyron and McDaniel and Doe 1-5 were responsible for monitoring and investigating complaints of sexually inappropriate conduct and/or violations of personal privacy and security.

28. Defendants Board, Bazzell, Casey, Pyron and McDaniel and Doe 1-5 responsible for the hiring, training and supervision of programs, activities and personnel as it relates to personal privacy and security issues for students.

29. At all times material hereto, the Defendants knowingly and/or willfully and/or with reckless indifference failed to consider the issue of sexual assaults in hiring, failed to train and supervise programs, activities and personnel with respect to this issue, failed to develop and implement policies and procedures to address personal privacy and security issues as they relate to special education students and failed to monitor and investigate complaints of sexually inappropriate conduct and/or violations of personal privacy and security of special education students including but not limited to a failure to inform teachers and parents of the existence of these allegations.

## Count I:  42 U.S.C. §1983
## Charles Leslie Coon

30. Plaintiff adopts and incorporates by reference paragraphs 1-28 hereinabove.

31. Plaintiff has a constitutionally protected liberty interest in his personal security, a right to privacy and/or bodily integrity that is a protected interest under the United States Constitution.

32. The Plaintiff's constitutionally protected rights were clearly established at the time of these incidents and a reasonable person would have known of said rights.

33. Defendant Coon violated those rights as set forth hereinabove.

34. As a result of the Defendants' conduct, the Plaintiff has suffered injuries or damages as set forth hereinafter.

## Count II:  42 U.S.C. §1983
## Pike County Board of Education, Mark Bazzell
## Terry Casey, Buddy Pyron, Robert McDaniel and Doe Defendants 1-5

35. Plaintiff adopts and incorporates by reference paragraphs 1-33 hereinabove.

36. Plaintiff has a constitutionally protected liberty interest in his personal security, a right to privacy and/or bodily integrity that is a protected interest under the United States Constitution.

37. The Plaintiff's constitutionally protected rights were clearly established at the time of these incidents and a reasonable person would have known of said rights.

38. Defendants Board, Bazzell, Casey, Pyron, McDaniel and Doe Defendants 1-5 had no formal policy to address issues of bodily integrity, personal security and/or the right to privacy as it relates to special education students in particular, including but not limited to policies relating to hiring, training and supervision of programs, activities and personnel, and monitoring and investigation of complaints of sexually inappropriate conduct and/or violations of personal privacy and security including but not limited to investigation of complaints and monitoring and supervision of employee contact with special education students and in particular students with mental retardation.

39. In the alternative, Defendants' custom(s) or polic(ies) were grossly insufficient and resulted in violations of the Plaintiff's clearly protected constitutional rights to privacy, personal security and/or bodily integrity.

40. The Defendant's conduct as set forth hereinabove evidences deliberate or reckless indifferences to the Plaintiff's constitutional rights.

41. There is a casual relationship between the Defendants' failure to act as set forth hereinabove and the injuries or damages complained of herein.

42. As a result of the Defendants' conduct the Plaintiff has suffered injuries or damages as set forth hereinafter.

### Count III: Rehabilitation Act

43. Plaintiff adopts and incorporates by reference paragraphs 1-41 hereinabove.

44. Plaintiff is a disabled individual as that term is defined under the Rehabilitation Act. As a disabled individual he is entitled to services and accommodations necessitated by his disability (mental retardation) such that he will have similar access to educational programs and services and that he will not be subjected to extraordinary personal security risks arising out of his disability.

45. Because of the nature of the Plaintiff's mental disability he is unable to judge, respond to or internalize what behavior may be socially appropriate or inappropriate in the school setting to the same extent that a student who is not mentally retarded.

46. Defendants have willfully failed to address these issues in planning his school program.

47. Defendants have further failed to address these issues in terms of hiring, training and supervision of programs, activities and personnel, development and implementation of policies and procedures to address personal privacy and security of special education students and monitoring and investigation of complaints of sexually inappropriate conduct and/or violations of personal privacy and security including but not limited to, monitoring and supervision of employees who come into contact with special education students such as the Plaintiff.

48. Defendants failure to act in this regard amounts to intentional, purposeful bad faith conduct, and violated the rights of Plaintiff secured by Section 504 of the Rehabilitation Act of 1973 *as amended*, 29 U.S.C. §794 and implementing regulations.

49. Accordingly, Defendants have subjected Plaintiff to discrimination on the basis of his disability in violation of 29 U.S.C. §794(a) and implementing regulations.

50. As a result of the Defendants' conduct, the Plaintiff has suffered injuries or damages as set forth hereinafter.

### Count IV: 20 U.S.C. §1681(a)
### Pike County Board of Education

51. Plaintiff adopts and incorporates by reference paragraphs 1-49 hereinabove.

52. Defendant Board is a recipient of Federal financial assistance as set forth hereinabove.

53. Plaintiff was subjected to sexual harassment at the hands of a school official which resulted in his exclusion from participation in and denial of the benefits of, an educational program or activity in violation of Title IX, 20 U.S.C. §1681(a).

54. The Board and/or officials of the Board knew or should have known of this harassment.

55. The Board and/or relevant officials who were invested by the Board with the duty to supervise the harasser and had the power to take action against him remained deliberately indifferent to this harassment and refused to take action against the harasser.

56. As a result of the Defendants' conduct, the Plaintiff has suffered injuries or damages as set forth hereinafter.

## Count V:  Negligence

**57.** Plaintiff adopts and incorporates by reference paragraphs 1-55 hereinabove.

**58.** Defendants Bazzell, Casey, Pyron, McDaniel and Doe Defendants 1-5 had a non-delegable statutory duty to report child abuse and/or suspicions of child abuse to the Department of Human Resources pursuant to Ala. Code §26-14-3.

**59.** Upon information and belief, a timely report was not made when the Defendants first knew or should have known that the abuse of a minor child or children may have occurred.

**60.** The Defendants' conduct was a breach of the standard of care, particularly as it applies to a mentally disabled student who was unable to act on his own behalf to protect himself from said abuse and/or to seek protection or guidance from other authority figures.

**61.** The Defendant's conduct was the proximate cause of a continuing series of sexually abusive acts which were inflicted on the Plaintiff and caused injury or damage as set forth hereinafter.

## Count VI:  Wanton and Reckless Conduct

**62.** Plaintiff adopts and incorporates by reference herein paragraphs 1-60 hereinabove.

**63.** The failure to report child abuse and/or suspicions of child abuse by Defendants Bazzell, Casey, Pyron, McDaniel and Doe Defendants 1-5 was wanton and reckless as it relates to a mentally disabled student who was unable to act on his own behalf to protect himself from said abuse and/or to seek protection or guidance from other authority figures.

**64.** The Defendants' conduct was the proximate cause of a continuing series of sexual abusive acts which were inflicted on the Plaintiff and caused injury or damage as set forth hereinafter.

## Count VII:  42 U.S.C. §1983
### Equal Protection
### Pike County Board of Education, Mark Bazzell
### Terry Casey, Buddy Pyron, Robert McDaniel and Doe Defendants 1-5

**65.** Plaintiff adopts and incorporates by reference herein paragraphs 1-63 hereinabove.

66. 42 U.S.C. §1983 provides that any person acting under color of state law who deprives any other person of rights granted by the Constitution or laws of the United States shall be liable to that person for equitable or legal relief.

67. As set forth hereinabove, Plaintiff was denied equal protection of the law to the extent that policies and procedures developed and implemented by the Board, Bazzell, Casey, Pyron, McDaniel and Doe Defendants 1-5 did not allow him the same level of personal security, personal privacy and/or bodily integrity as was provided to other students enrolled in the Board's programs.

68. Defendants' conduct was the reckless and willful disregard for the student's right to participate in educational programs in a non-discriminatory manner.

69. As a result of the Defendants' conduct, the Plaintiff has suffered injuries or damages as set forth hereinafter.

## Injuries or Damages

70. As a result of Defendant's conduct, JR suffered and continues to suffer, mental anguish, distress, humiliation, embarrassment, regression in academic and social skills, exclusion from his regular school environment with no friends or support, ongoing fear and confusion, all exacerbated by his disability.

71. The Plaintiff will require continuing counseling, care and training associated with his social and emotional development which would not have been required but for the Defendants conduct.

## Prayer for Relief

**WHEREFORE, THE PREMISES CONSIDERED,** the Plaintiffs request the following relief:

A. That the Court assume Jurisdiction in this case;
B. That the matter be set for trial by jury;
C. Issue an award of compensatory damages against the Defendants;
D. Issue a mandatory injunction requiring the development and implementation of policies and procedures relating to hiring, training and supervision of programs, activities and personnel with respect to personal privacy and security issues;
E. Issue a mandatory injunction requiring the development and implementation of Board Policies and procedures relating to monitoring and investigation of complaints of sexually inappropriate conduct and/or violations of personal privacy and security of special education students;
F. Issue a mandatory injunction requiring the development and implementation of policies and procedures to address personal privacy and security of special education students;
G. Issue an award of punitive damages against the Defendants;

9

H. Award Plaintiffs' attorneys fees and costs pursuant to 29 U.S.C. §794 and §42, U.S.C. §1988 and under the Rehabilitation Act;

I. Award such other further relief deemed appropriate by this Honorable Court

Respectfully submitted on this 26th day of June, 2007

/s/   Susan Shirock DePaola
ASB:  7431-L75S

**Susan Shirock DePaola**
**1726 West Second Street~Suite B**
**Montgomery, AL 36106**
specialeducationattorney@mindspring.com

/s/   Deanie Clark Allen
ASB:  1662-G69A

**Deanie Clark Allen**
**Aliant Center**
**2740 Zelda Road, Fourth Floor**
**Montgomery, AL 36106**
dallen@azarlaw.com

# APPENDIX B

Westlaw.

965 So.2d 780                                                                    Page 1
965 So.2d 780, 226 Ed. Law Rep. 476
**(Cite as: 965 So.2d 780)**

**C**
Ex parte Trottman
Ala.,2007.

Supreme Court of Alabama.
Ex parte Regina Deloise TROTTMAN and Willie
Ross.
(In re T.W., individually and as next friend of J.T.,
a minor
v.
Russell County Board of Education et al.).
**1060073.**

March 16, 2007.

**Background:** Elementary school student's mother, individually and as the next friend of student, sued county board of education, three elementary school employees, and others, alleging claims of assault and battery, negligence and wantonness, and negligent or wanton supervision or training. The Russell Circuit Court, No. CV-01-433,George R. Greene, J., entered a summary judgment for the board of education and school secretary, but denied the defendants' summary-judgment motion as to instructional assistant and school principal. Instructional assistant and principal petitioned the Supreme Court for a writ of mandamus.

**Holdings:** The Supreme Court, Stuart, J., held that:
(1) principal and instructional assistant were entitled to State-agent immunity with regard to claim of negligent supervision of students, and
(2) principal was entitled to State-agent immunity with regard to claim of negligent supervision of personnel.

Petition granted; writ issued.

West Headnotes

**[1] Mandamus 250 ⊂⊃1**

250 Mandamus
  250I Nature and Grounds in General

    250k1 k. Nature and Scope of Remedy in General. Most Cited Cases
Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.

**[2] Mandamus 250 ⊂⊃28**

250 Mandamus
  250II Subjects and Purposes of Relief
    250II(A) Acts and Proceedings of Courts, Judges, and Judicial Officers
      250k28 k. Matters of Discretion. Most Cited Cases
In cases involving the exercise of discretion by an inferior court, mandamus may issue to compel the exercise of that discretion; it may not, however, issue to control or review the exercise of discretion except in a case of abuse.

**[3] Schools 345 ⊂⊃147**

345 Schools
  345II Public Schools
    345II(K) Teachers
      345II(K)1 In General
        345k147 k. Duties and Liabilities. Most Cited Cases
Elementary-school principal and instructional assistant were entitled to State-agent immunity with regard to claims of negligent supervision of students, in lawsuit brought by 11-year-old student's mother after student was sexually assaulted when she was permitted to leave school grounds with an individual who said he was student's brother; mother failed to establish that a specific checkout policy existed at the school at the time of the incident, and, as a result, she was unable to establish that principal and instructional assistant exceeded the scope of their discretion by permitting student to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

965 So.2d 780
965 So.2d 780, 226 Ed. Law Rep. 476
**(Cite as: 965 So.2d 780)**

Page 2

leave school grounds with individual.

**[4] Schools 345 ☜147**

345 Schools
   345II Public Schools
      345II(K) Teachers
         345II(K)1 In General
            345k147 k. Duties and Liabilities.
Most Cited Cases
State-agent immunity applies to individuals who are exercising judgment in the discharge of duties imposed by statute, rule, or regulation in educating students; educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process.

**[5] Schools 345 ☜147**

345 Schools
   345II Public Schools
      345II(K) Teachers
         345II(K)1 In General
            345k147 k. Duties and Liabilities.
Most Cited Cases
Elementary school principal was entitled to State-agent immunity with regard to claim of negligent supervision of personnel asserted against him, in lawsuit brought by 11-year-old student's mother after student was sexually assaulted when instructional assistant permitted student to leave school grounds with an individual who said he was student's brother; principal exercised discretion within his authority when he assigned assistant to check students in and out of school, and student's mother did not present any evidence to establish that at the time principal assigned assistant, under his supervision, to check students in and out of school, he acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority.

**\*781** Mark S. Boardman and Philip F. Hutcheson of Boardman, Carr & Hutcheson, P.C., Chelsea, for petitioners.
Sam E. Loftin of Loftin, Loftin & Hall, Phenix

City, for respondents.
STUART, Justice.
T.W., individually and as the next friend of J.T., her daughter, a minor, sued the Russell County Board of Education; Regina Deloise Trottman, individually and in her capacity as an instructional assistant at Mount Olive Elementary School; Dyanne D. Hood, individually and in her official capacity as secretary at Mount Olive Elementary School; Willie Ross, individually and in his official capacity as principal of Mount Olive Elementary School; C.W., then an 18-year-old former student of Mount Olive Elementary School; and others, alleging claims of assault and battery, negligence and wantonness, and negligent or wanton supervision or training. Defendants Russell County Board of Education, Hood, Trottman, and Ross moved for a summary judgment, arguing that they were entitled to State-agent immunity. See *Ex parte Cranman,* 792 So.2d 392 (Ala.2000). The trial court entered a summary judgment for the Russell County Board of Education and Hood, but denied the summary-judgment motion as to Trottman and Ross. Trottman and Ross then petitioned this Court for a writ of mandamus directing the Russell Circuit Court to enter a summary judgment for them on the basis of State-agent immunity. We grant the petition and issue the writ.

*Facts*

On November 16, 1999, J.T., then an 11-year-old girl enrolled in the sixth grade at Mount Olive Elementary School, informed her teacher that she was sick and wanted to go home. The teacher instructed J.T. to telephone her mother. J.T. left the classroom and returned a few minutes later. About 45 minutes after J.T. returned, **\*782** the teacher was informed that J.T. needed to come to the office to check out of school.

Trottman, an instructional assistant, was assisting in the office that day and, at Ross's direction, was checking students in and out of the school. C.W., an 18-year-old former student at Mount Olive Elementary School, entered the office and spoke with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Hood. Trottman did not overhear their conversation. C.W. then informed Trottman, outside Hood's presence, that he needed to check his sister, J.T., out of school. When J.T. arrived at the office, Trottman checked her out, permitting J.T. to leave with C.W.

After J.T. and C.W. left the school grounds, Trottman remarked to Hood that J.T. had a nice brother. Hood, knowing that J.T. did not have a brother, realized that J.T. had left the school grounds with C.W. under a false pretense. Hood and a teacher left the school grounds to search for J.T. They found J.T. in C.W.'s vehicle, which was parked in a vacant lot near his house. When Hood approached the vehicle, she could see that C.W. was sexually assaulting J.T.; Hood was able to stop the sexual assault before it was completed.

### Standard of Review

[1][2] "The standard governing our review of an issue presented in a petition for a writ of mandamus is well established:

" '[M]andamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. *Barber v. Covington County Comm'n,* 466 So.2d 945 (Ala.1985). In cases involving the exercise of discretion by an inferior court, mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion except in a case of abuse. *Ex parte Smith,* 533 So.2d 533 (Ala.1988).'

"*Ex parte Edgar,* 543 So.2d 682, 684 (Ala.1989)."

*Ex parte Blankenship,* 806 So.2d 1186, 1187 (Ala.2000).

### Discussion

Ross and Trottman maintain that the trial court exceeded the scope of its discretion when it refused to enter a summary judgment for them on the basis that they were not entitled to the protection of State-agent immunity as provided in *Ex parte Cranman,* supra. According to Ross and Trottman, they are entitled to State-agent immunity for the claim of negligent supervision of students because, they say, their conduct in allowing J.T. to leave the school grounds with C.W. fell within the discretionary function of educating and supervising students. Additionally, Ross argues that he is entitled to State-agent immunity on the claim of negligent supervision of personnel because, he says, his conduct fell within the discretionary function of exercising his judgment in supervising personnel and formulating policies.

In *Giambrone v. Douglas,* 874 So.2d 1046 (Ala.2003), this Court set forth the law applicable to our analysis in a case like this one, stating:

"In *[Ex parte] Cranman,* [792 So.2d 392 (Ala.2000) ], this Court restated the doctrine of State-agent immunity as follows:

" 'A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

*783 " '(1) formulating plans, policies, or designs; or

" '(2) *exercising his or her judgment in* the administration of a department or agency of government, including, but not limited to, examples such as:

" '(a) making administrative adjudications;

" '(b) allocating resources;

" '(c) negotiating contracts;

" '(d) hiring, firing, transferring, assigning, or *su-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

965 So.2d 780
965 So.2d 780, 226 Ed. Law Rep. 476
**(Cite as: 965 So.2d 780)**

*pervising personnel;* or

" '(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

" '(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

" '(5) *exercising judgment in the discharge of duties imposed by statute, rule, or regulation in* releasing prisoners, counseling or releasing persons of unsound mind, or *educating students.*

" 'Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

" '(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

" '(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'

"792 So.2d at 405....

"We have established a 'burden-shifting' process when a party raises the defense of State-agent immunity. *Ex parte Wood,* 852 So.2d 705 (Ala.2002). In order to claim State-agent immunity, the [State agents] bear the burden of demonstrating that [the plaintiff's] claims arise from a function that would entitle them to immunity. *Wood,* 852 So.2d at 709; *Ryan v. Hayes,* 831 So.2d 21 (Ala.2002). If the [State agents] make such a showing, the burden then shifts to [the plaintiff], who, in order to deny the [State agents] immunity from suit, must estab-

lish that the [State agents] acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority. *Wood,* 852 So.2d at 709; *Ex parte Davis,* 721 So.2d 685, 689 (Ala.1998). A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' *Ex parte Butts,* 775 So.2d 173, 178 (Ala.2000)."

874 So.2d at 1051-52.

### A. Claim of Negligent Supervision of Students Asserted Against Ross and Trottman

[3][4] *Ex parte Cranman* provides State-agent immunity for individuals who are "exercising judgment in the discharge of duties imposed by statute, rule, or regulation in ... educating students." 792 So.2d at 405. Educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process.

In *Ex parte Blankenship,* supra, this Court held that a band director and a high *784 school principal were entitled to State-agent immunity because they were exercising their discretion in educating students when they allowed a 19-year-old male, who was not a student at the school, to participate in the band. In *Blankenship,* the parents of C.S., a female band member, had asked Harold Blankenship, the band director, to keep C.S. and Jason Howard, the 19-year-old male, separated. When the band returned to Elmore County from marching at a football game in Troy, neither C.S.'s parents nor the parents designated by C.S.'s parents to pick up C.S. were available, even though C.S.'s parents knew that it was their responsibility to provide C.S. with a ride home after the trip. C.S. and a girlfriend left with Howard and his brother, who was at the high school to pick up Howard. At some point after that, C.S. and Howard engaged in sexual intercourse. When C.S. told her parents what had happened, C.S.'s parents reported the incident to the police.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

965 So.2d 780
965 So.2d 780, 226 Ed. Law Rep. 476
(Cite as: 965 So.2d 780)

Page 5

They later sued Blankenship and Louie Fryer, the principal, alleging that Blankenship and Fryer had failed to properly supervise C.S. by allowing C.S. to leave the school grounds with Howard.

Blankenship and Fryer moved for a summary judgment, arguing that their actions were protected under the doctrine of discretionary immunity. C.S.'s parents argued that Blankenship and Fryer had exceeded the scope of their discretion and were not entitled to immunity because they had allowed Howard, a nonstudent, to participate in the band when the guidelines established by the Elmore County School Board stated that "a child could not participate in an extracurricular activity on a particular day if the child had not attended school for the entire day." 806 So.2d at 1188. After the trial court denied Blankenship and Fryer's motion, they petitioned this Court for a writ of mandamus directing the trial court to enter a summary judgment in their favor. This Court, recognizing that the guidelines did not limit the discretion of a principal and a band director in allowing nonstudents to participate in the band, held that Blankenship and Fryer were protected under the doctrine of discretionary immunity because their decision to allow Howard to participate in the band was made while they were acting in their official capacity discharging their duties in educating students. We stated:

"One with 20/20 hindsight might question the wisdom of Blankenship and Fryer's decision to allow a person they thought was a student from a private school outside Elmore County to participate in the band activities and the wisdom of their failing to verify that he was a student at the private school he claimed to attend. State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions."

806 So.2d at 1190.

Applying the reasoning set forth in *Blankenship,* we conclude that Ross and Trottman are entitled to the protection of State-agent immunity. Ross, in his of-

ficial capacity as principal of Mount Olive Elementary School, designated Trottman to check students in and out of school on the day J.T. left the school with C.W. The documents before us establish that allowing a student to leave with an older sibling was a standard checkout procedure at Mount Olive Elementary School. As a consequence, Trottman permitted J.T. to leave the school grounds with C.W., who represented to Trottman that he was J.T.'s brother. Therefore, Ross's and Trottman's actions occurred while they were discharging their official duties in educating students.

*785 Because Ross and Trottman established that their conduct was based on their exercise of judgment in educating students, the burden then shifted to T.W. to establish that Ross and Trottman acted "willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." According to T.W., Ross and Trottman acted beyond the scope of their authority because, she argues, they did not follow the established procedure for allowing a student to check out of school. She maintains that if the procedure designated in the 1998-1999 district-wide handbook and the proposed 1999-2000 Mount Olive Elementary School handbook had been followed, J.T. would not have been allowed to check out and leave the school grounds with C.W. She states that these handbooks provided "detailed rules and regulations," which Ross and Trottman were required to follow, and, because they did not follow these established procedures in deciding to allow J.T. to check out and leave the school grounds with C.W., they exceeded their authority. In support of her argument, she also offered an affidavit stating that when she enrolled J.T. at Mount Olive Elementary School, she completed a form in which she indicated that in the event she could not pick up J.T. at school, only T.W.'s mother or T.W.'s aunt were authorized to pick up J.T. from school.

Ross and Trottman, however, presented evidence indicating that there was not an official checkout policy in place at Mount Olive Elementary School at the time of the incident. They submitted an affi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

965 So.2d 780
965 So.2d 780, 226 Ed. Law Rep. 476
(Cite as: 965 So.2d 780)

davit from Lee Henderson, the superintendent of education for the Russell County Board of Education at the time of J.T.'s assault. He stated:

"The Russell County Board of Education did not have any policies, procedures, rules or regulations in place regarding the checking out of students during the 1999-2000 school year. While the Russell County Board of Education did not require each school to have its own handbook during the 1999-2000 school year, we were in a transition period where each school was in the process of formulating its own handbook addressing the specific needs of the school. During this school year, each principal, including Mr. Ross, had the authority to put into effect those procedures which best served the circumstances of their community and school. Each principal also had the authority to delegate the responsibility for checking students out."

Thus, Henderson's affidavit establishes that there was not a district policy regarding checking students out of school. Additionally, Ross and Trottman presented evidence through the depositions of Ross and other faculty and staff working at Mount Olive Elementary School during the 1999-2000 school year indicating that although there was a proposed 1999-2000 handbook for Mount Olive Elementary School, the handbook was never adopted and there was no school policy regarding checking students out of school.[FN1] Ross and Trottman further state that the enrollment form T.W. completed when she enrolled J.T. at Mount Olive Elementary School did not designate certain individuals to pick J.T. up in the event T.W. could not do so; rather, it provided names of individuals whom the school could contact in case of an emergency.[FN2]

> FN1. T.W. does not contend that she was provided a copy of this draft 1999-2000 handbook.

> FN2. A copy of this enrollment form is not included in the documents submitted to this Court. According to Ross and

Trottman, a copy of the enrollment form was not submitted to the trial court for review. T.W. does not refute this statement.

**\*786** In light of the foregoing, T.W. has not established that a specific checkout policy existed at Mount Olive Elementary School at the time of the incident; thus, she has not established that a genuine issue of material fact exists as to whether Ross and Trottman exceeded the scope of their discretion by permitting J.T. to leave the school grounds with C.W. Cf. *Giambrone v. Douglas,* supra (holding that a genuine issue of material fact existed as to whether a wrestling coach was entitled to State-agent immunity because evidence was presented indicating that *specific* guidelines and rules had been provided to the coach, thus removing the coach's discretion). Consequently, the trial court exceeded the scope of its discretion by refusing to enter a summary judgment for Trottman and Ross on the ground of State-agent immunity with regard to T.W.'s claim of negligent supervision of students.

### B. Claim of Negligent Supervision of Personnel Asserted Against Ross

[5] Additionally, Ross contends that the trial court exceeded the scope of its discretion in refusing to grant him State-agent immunity with regard to T.W.'s claim that he was negligent in his supervision of school personnel.

*Ex parte Cranman* provides that an agent of the State is protected from liability for decisions made while exercising his or her judgment in the administration of a department or agency of the State when assigning or supervising personnel. 792 So.2d at 405. In *Hill v. Allen,* 495 So.2d 32 (Ala.1986), this Court held that a school principal, who was accused of negligent supervision of teachers and aides who had allegedly assaulted mentally retarded students, was entitled to State-agent immunity. In *Hill,* the students maintained that the principal knew or should have known of the alleged abuses inflicted upon them, yet failed to prevent them. This Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

965 So.2d 780
965 So.2d 780, 226 Ed. Law Rep. 476
**(Cite as: 965 So.2d 780)**

Page 7

held that the principal was entitled to immunity because he was exercising his judgment in supervising the teachers at the time of the assaults and that he did not exceed the scope of his authority because the students did not allege or establish that the principal had acted fraudulently or in bad faith.

Here, like the principal in *Hill,* Ross exercised discretion within his authority when he assigned Trottman to check students in and out of school. T.W. did not present any evidence to establish that at the time Ross assigned Trottman, under his supervision, to check students in and out of school Ross acted "willfully, maliciously, fraudulently, in bad faith or beyond his ... authority." Therefore, Ross is entitled to State-agent immunity with regard to T.W.'s claim that he negligently supervised Trottman.

Finally, T.W. argues that Ross is not entitled to State-agent immunity because, she says, he exceeded the scope of his discretion by failing to formulate and enforce proper checkout procedures at Mount Olive Elementary School.

*Ex parte Cranman* specifically provides that a State agent is entitled to immunity when formulating policies. 792 So.2d at 405. In *Louviere v. Mobile County Board of Education,* 670 So.2d 873 (Ala.1995), this Court held that a principal of an elementary school was entitled to State-agent immunity on a claim that he "negligently failed to exercise proper safety measures, to monitor school equipment, to maintain safety precautions, and to institute safety measures." 670 So.2d at 877. In *Louviere* an elementary school student was severely burned when she stepped into a hole and her feet and ankles were burned by hot water or steam, which allegedly was caused by an underground boiler pipe. This Court held that the principal was immune from liability, stating:

"Whatever her action might have been, any decision she might have made was *787 related to the performance of her duties as principal, and called for 'personal deliberation[s], decision[s] and judg-

ment[s]' in the performance of her job. Thus, in making that decision she was engaged in the performance of discretionary functions for which she possessed constitutional immunity."

670 So.2d at 877.

Like the principal in *Louviere,* Ross is also entitled to State-agent immunity. The development of a checkout policy at Mount Olive Elementary School was within Ross's discretion in making decisions as principal for the school. T.W. did not present any evidence indicating that in formulating the checkout policy Ross acted "willfully, maliciously, fraudulently, in bad faith, or beyond his ... authority." Therefore, Ross is entitled to State-agent immunity on this claim.

### Conclusion

The facts here, like those in *Blankenship,* supra, and other similar cases, [FN3] make us question the wisdom of Ross's and Trottman's decisions as they related to J.T.; hindsight, however, is 20/20, and we will not second-guess their decisions.

> FN3. See, e.g., *Ex parte Spivey,* 846 So.2d 322 (Ala.2002); *Ex parte Nall,* 879 So.2d 541 (Ala.2003); *Ex parte Turner,* 840 So.2d 132 (Ala.2002); and *Byrd v. Sullivan,* 657 So.2d 830 (Ala.1995).

Ross and Trottman have established a clear legal right to the relief requested; therefore, we direct the trial court to enter a summary judgment in favor of Ross and Trottman.

PETITION GRANTED; WRIT ISSUED.

COBB, C.J., and LYONS, BOLIN, and MURDOCK, JJ., concur.
Ala.,2007.
Ex parte Trottman
965 So.2d 780, 226 Ed. Law Rep. 476

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX C

Education Improvement Act (IDEIA) violations, and

(2) failure to allege either bad faith or gross misjudgment on the part of the governmental defendants precluded Rehabilitation Act claim based on Individuals with Disabilities Education Act (IDEA) violation.

Motion granted.

**1. Civil Rights ⊗1395(2)**

Section 1983 claim was not stated on basis of Individuals with Disabilities Education Improvement Act (IDEIA) violations where plaintiffs failed to allege exceptional circumstances or persistent egregious conduct by school defendants that would distinguish their case from the garden variety Individuals with Disabilities Education Act (IDEA) case, failed to include some factual basis for the allegation of a municipal policy or custom that had propelled the alleged violations, and did not explain why specific performance and compensatory education would be inadequate remedies. 42 U.S.C.A. § 1983; Individuals with Disabilities Education Improvement Act of 2004, § 101 et seq., 20 U.S.C.A. § 1400 et seq.

**2. Schools ⊗148(2.1)**

Failure to allege either bad faith or gross misjudgment on the part of the governmental defendants precluded Rehabilitation Act claim based on Individuals with Disabilities Education Act (IDEA) violation. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794; Individuals with Disabilities Education Improvement Act of 2004, § 101 et seq., 20 U.S.C.A. § 1400 et seq.

---

**Delores ROBINSON, for D.R., a minor, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civil Action No. 07–1266 (JDB).**

United States District Court, District of Columbia.

Feb. 26, 2008.

**Background:** School defendants moved to dismiss § 1983 and Rehabilitation Act claims based on a denial of a free appropriate public education (FAPE).

**Holdings:** The District Court, John D. Bates, J., held that:

(1) section 1983 claim was not stated on basis of Individuals with Disabilities

Jude Chinedu Iweanoge, The Iweanoges' Firm, P.C., Washington, DC, for Plaintiffs.

Amy Caspari, Office of the Attorney General, Washington, DC, for Defendants.

## MEMORANDUM OPINION

JOHN D. BATES, District Judge.

Plaintiffs D.R., a minor, and Delores Robinson, D.R.'s mother and next friend, bring this action against the District of Columbia and Michelle Rhee, the Chancellor of the District of Columbia Public Schools ("DCPS"). Plaintiffs allege that defendants denied D.R. a free appropriate public education ("FAPE") and special education services to which she was entitled under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"); 20 U.S.C. § 1400 et seq., and that a hearing officer's April 17, 2007 determination to dismiss their case was in error. Plaintiffs' complaint is brought pursuant to the IDEIA, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and 42 U.S.C. § 1983 ("Section 1983"). Currently before the Court is defendants' motion for partial dismissal. Upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, the Court will grant defendants' motion.

## BACKGROUND

The D.C. public school system has previously determined that D.R., a seventeen-year-old student, requires special education services. Compl. ¶ 5. On June 11, 2006, a hearing officer's determination ("HOD") was issued regarding D.R.'s special education requirements. The HOD incorporated material from a settlement agreement between D.R. and DCPS and required DCPS to conduct certain evaluations and assessments of D.R. Id. ¶ 7. When the testing was completed, DCPS was to convene a meeting to review the results and make any changes that may be needed in D.R.'s existing individual education plan ("IEP"). Id. According to

plaintiffs, DCPS failed to fulfill its obligations under the HOD. Id.

Plaintiffs thereafter filed a due process complaint on February 1, 2007. Id. ¶ 10. After a hearing was conducted and evidence was reviewed, the hearing officer determined that all of the issues had been raised in plaintiffs' previous complaint and had been resolved in the June 11, 2006 HOD, "which he found to be valid and current." Id. ¶ 12. Thus, the hearing officer dismissed plaintiffs' complaint on the basis of res judicata, id. ¶ 15, and plaintiffs then turned to this Court seeking relief.

Plaintiffs set forth four counts in their complaint: (1) that defendants failed to provide D.R. with a FAPE in violation of IDEIA and Section 504, (2) that defendants failed to provide D.R. with appropriate special education services and evaluations in violation of IDEIA, (3) that the hearing officer erred in his decision to dismiss plaintiffs' case in its entirety on the basis of res judicata, and (4) that the hearing officer erred in his decision by failing to consider new facts in the case. Pursuant to Fed.R.Civ.P. 12(b)(6), defendants have now moved for partial dismissal of plaintiffs' claims under Section 1983 and Section 504 for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Erickson v. Pardus,* 551 U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081

**40**  535 FEDERAL SUPPLEMENT, 2d SERIES

(2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.,* 127 S.Ct. at 1964–65; *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.,* 127 S.Ct. at 1965 (citations omitted). Hence, although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,'" *id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), the "threshold requirement" of Fed.R.Civ.P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,'" *id.* at 1966 (quoting Fed.R.Civ.P. 8(a)(2)).

The notice pleading rules, however, are not meant to impose a great burden on a plaintiff. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979); *see also Erickson,* 127 S.Ct. at 2200 (citing *Bell Atl. Corp.,* 127 S.Ct. at 1965). The plaintiff must be given

every favorable inference that may be drawn from the allegations of fact. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'n Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *see also Domen v. Nat'l Rehab. Hosp.,* 925 F.Supp. 830, 837 (D.D.C.1996) (citing *Papasan,* 478 U.S. at 286, 106 S.Ct. 2932).

## DISCUSSION

### I. Section 1983

[1] When a student is denied special education services to which he is entitled, the typical remedy is to provide compensatory education. *See Walker v. District of Columbia,* 157 F.Supp.2d 11, 30 (D.D.C. 2001). Because IDEIA does not provide for compensatory damages, plaintiffs occasionally assert Section 1983 claims to seek monetary relief as an additional remedy for IDEIA violations. Defendants argue, however, that in the instant action plaintiffs have failed to state a claim for relief under Section 1983. Indeed, several other courts have dismissed similarly pled complaints for failing to state a Section 1983 claim. *See, e.g., Savoy-Kelly v. Eastern High Sch.,* Civ. No. 04–1751, 2006 WL 1000346, slip op. at 10–11 (D.D.C. April 14, 2006); *R.S. v. District of Columbia,* 292 F.Supp.2d 23, 28 (D.D.C.2003); *Jackson v. District of Columbia,* Civ. No. 02–968, slip op. at 10 (D.D.C. Sept. 21, 2003); *see generally Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 529 (4th Cir.1998) (holding that "[b]ecause IDEA provides a comprehensive remedial scheme for violations of its own requirements . . . parties may not sue under section 1983 for an

IDEA violation"), *cert. denied*, 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998). In reaching their conclusions, these previous decisions have relied on the four-part test articulated in *Walker v. District of Columbia*, 157 F.Supp.2d 11, 30 (D.D.C. 2001).

[Applying the four-part test here, to base their Section 1983 claim on violations of IDEIA plaintiffs must show: (1) that the school system violated one or more provisions of IDEIA, (2) that "exceptional circumstances exist, such that the conduct of DCPS that caused the IDEA violations was persistently egregious and prevented or frustrated [D.R.] from securing equitable relief under the IDEA," (3) "that the District of Columbia has a custom or practice that is the moving force behind the alleged IDEIA violations," and (4) why the normal IDEIA remedies, such as compensatory education, are inadequate to compensate for the harm suffered. *Id.*

Plaintiffs have satisfied the first requirement with their allegations that defendants have failed to provide D.R. with a FAPE, with appropriate special education services, and with evaluations required under the June 11, 2006 HOD. However, even when the complaint is liberally construed in plaintiffs' favor, they have failed to allege sufficient factual allegations to satisfy the remaining three requirements of the test. Although the Court recognizes that the denial of special education services may have a serious impact on the development of a student, plaintiffs have failed to allege exceptional circumstances or persistent egregious conduct by defendants "that would distinguish this case from the garden variety IDEA case in which a school district fails to provide an appropriate, timely IEP or fails to hold a timely due process hearing." *Id.* at 34. Plaintiffs' complaint also fails to "include some factual basis for the allegation of a municipal policy or custom" that has propelled the

alleged violations. *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996). And finally, plaintiffs have not attempted to explain why specific performance and compensatory education would be inadequate remedies. Indeed, plaintiffs primarily seek this relief with the general additional caveat for the Court to award any further relief it deems just and proper.

Because plaintiffs' complaint fails to set forth any factual allegations that could be construed to support three out of four requirements of the established test for premising a Section 1983 claim on IDEIA violations, plaintiffs' Section 1983 claim must be dismissed.

## II. Section 504

Count I of the complaint alleges that defendants' "failure to provide plaintiff with free, appropriate education violates plaintiffs' rights under the IDEA and section 504." Compl. ¶ 17. Defendants have moved to dismiss the Section 504 claim noting their belief that the Rehabilitation Act "—intended to bar employment discrimination against handicapped individuals under Federally financed programs, e.g. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 626, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984)—is wholly irrelevant here." Defs.' Mem. at 6.

[2] Section 504 prohibits programs and entities that receive federal funding from denying benefits to, or otherwise discriminating against, a person "solely by reason" of that individual's handicap. 29 U.S.C. § 794(a). As this Court has previously noted, "[t]his statute seems an odd fit for a setting in which local governments are charged with providing specialized education for disabled students." *T.T. v. District of Columbia*, 2007 WL 2111032, at *10 (D.D.C. July 23, 2007). Recognizing this incongruity, courts have determined that "in order to show a violation of the

[36]

Rehabilitation Act, something more than a mere failure to provide the 'free appropriate education' . . . must be shown." *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C.Cir.1984) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982)); *see also Sellers*, 141 F.3d at 529; *T.T.*, 2007 WL 2111032, at *10; *R.S.*, 292 F.Supp.2d at 28. Specifically, plaintiffs must show either bad faith or gross misjudgment on the part of the governmental defendants. *See T.T.*, 2007 WL 2111032, at *10; *R.S.*, 292 F.Supp.2d at 28; *Walker v. District of Columbia*, 969 F.Supp. 794, 797 (D.D.C.1997); *accord Sellers*, 141 F.3d at 529.

Although plaintiffs' complaint includes allegations that defendants failed to provide D.R. with a FAPE, that defendants failed to provide appropriate special education services and evaluations, and that the hearing officer erred in his decision to dismiss plaintiffs' case in its entirety, the complaint completely fails to suggest allegations of bad faith or gross misjudgment sufficient to support a Section 504 claim. Hence, that claim must be dismissed.

## CONCLUSION

As currently pled, this case appears to be "no different from the unfortunate multitude of others in this district in which, [plaintiffs allege that] through the denial of certain procedural rights guaranteed by the IDEA, DCPS failed a young . . . student more than once and deprived [her] for a time of a free and appropriate public education." *Walker*, 157 F.Supp.2d at 35. Plaintiffs are, therefore, limited to their IDEIA remedies. Accordingly, and for the reasons stated above, this Court will grant defendants' partial motion to dismiss the Section 1983 and Section 504 claims.

Recognizing the possibility of this outcome, plaintiffs have sought leave to amend their complaint. *See* Pls.' Opp. at 5, 6. Because Fed.R.Civ.P. 15(a) allows parties to amend their pleadings once as a matter of course before a responsive pleading has been filed and because a motion to dismiss does not constitute a responsive pleading, plaintiffs have the option of amending their complaint if they so choose. *See James V. Hurson Assoc., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C.Cir. 2000) (confirming that "a motion to dismiss is not a responsive pleading for the purposes of Rule 15"). A separate order accompanies this memorandum opinion.



# APPENDIX D

Westlaw.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
**(Cite as: 524 F.Supp.2d 35)**

Page 1

**C**
B.R. ex rel. Rempson v. District of Columbia
D.D.C.,2007.

United States District Court,District of Columbia.
B.R., a minor, by her mother and next friend,
Ulyssa REMPSON, Plaintiff,
v.
DISTRICT OF COLUMBIA et al., Defendants.
**Civil Action No. 07-0578 (RMU).**

Dec. 3, 2007.

**Background:** Mother filed § 1983 suit against
charter school and public school district, on behalf
of her disabled minor daughter, alleging violation
of Individuals with Disabilities in Education Act
(IDEA) and Rehabilitation Act. Defendants moved
to dismiss for failure to state claim.

**Holdings:** The District Court, Ricardo M. Urbina,
J., held that:
(1) compensatory damages claim, under § 1983, for
IDEA violation was not sufficiently alleged, and
(2) Rehabilitation Act claim required clarification.

Granting motion in part and granting leave to amend.

West Headnotes

**[1] Federal Civil Procedure 170A ☞660.1**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak660 Signature
            170Ak660.1 k. In General. Most Cited
Cases

**Federal Courts 170B ☞29.1**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General

         170Bk29 Objections to Jurisdiction, De-
termination and Waiver
            170Bk29.1 k. In General. Most Cited
Cases
Technical violation such as the absence of a signa-
ture on complaint does not eliminate subject-matter
jurisdiction.

**[2] Federal Civil Procedure 170A ☞1771**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)3 Pleading, Defects In, in Gen-
eral
            170Ak1771 k. In General. Most Cited
Cases
Motion to dismiss for failure to state claim tests the
legal sufficiency of a complaint. Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ☞673**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak673 k. Claim for Relief in Gen-
eral. Most Cited Cases

**Federal Civil Procedure 170A ☞674**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak674 k. Theory of Claim. Most
Cited Cases
It is not necessary for the plaintiff to plead all ele-
ments of his prima facie case in the complaint, or
plead law or match facts to every element of a legal
theory, but the plaintiff must allege a plausible enti-
tlement to relief by setting forth any set of facts
consistent with the allegations. Fed.Rules
Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[4] Federal Civil Procedure 170A ⟨⟩673**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak673 k. Claim for Relief in General. Most Cited Cases
While facts adduced in complaint must possess enough heft to show that the pleader is entitled to relief, a complaint does not need detailed factual allegations. Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⟨⟩1829**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1829 k. Construction of Pleadings. Most Cited Cases

**Federal Civil Procedure 170A ⟨⟩1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
In resolving a motion to dismiss for failure to state claim, the district court must treat the complaint's factual allegations, including mixed questions of law and fact, as true and draw all reasonable inferences therefrom in the plaintiff's favor. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⟨⟩1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination

               170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
While many well-pleaded complaints are conclusory, the district court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations on motion to dismiss for failure to state claim. Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

**[7] Schools 345 ⟨⟩155.5(5)**

345 Schools
   345II Public Schools
      345II(L) Pupils
         345k155.5 Handicapped Children, Proceedings to Enforce Rights
            345k155.5(5) k. Judgment and Relief; Damages, Injunction, and Costs. Most Cited Cases
A student is entitled to compensatory education if a school system has failed to provide her special education services, but compensatory damages are not available under the IDEA, and a plaintiff seeking them must bring a § 1983 claim to vindicate her rights under the IDEA. Individuals with Disabilities Education Act, § 601(d)(1)(A), 20 U.S.C.A. § 1400(d)(1)(A); 42 U.S.C.A. § 1983.

**[8] Civil Rights 78 ⟨⟩1401**

78 Civil Rights
   78III Federal Remedies in General
      78k1400 Presumptions, Inferences, and Burdens of Proof
         78k1401 k. In General. Most Cited Cases
It is the plaintiff's burden to establish that a municipality has a custom or practice abridging her constitutional or statutory rights in violation of § 1983. 42 U.S.C.A. § 1983.

**[9] Civil Rights 78 ⟨⟩1351(2)**

78 Civil Rights
   78III Federal Remedies in General
      78k1342 Liability of Municipalities and Other Governmental Bodies

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
**(Cite as: 524 F.Supp.2d 35)**

78k1351    Governmental    Ordinance, Policy, Practice, or Custom
78k1351(2) k. Education. Most Cited Cases

**Civil Rights 78 ☞1418**

78 Civil Rights
78III Federal Remedies in General
78k1416 Weight and Sufficiency of Evidence
78k1418 k. Education. Most Cited Cases

**Schools 345 ☞155.5(2.1)**

345 Schools
345II Public Schools
345II(L) Pupils
345k155.5 Handicapped Children, Proceedings to Enforce Rights
345k155.5(2) Judicial Review or Intervention
345k155.5(2.1) k. In General. Most Cited Cases
To establish liability under § 1983 for an IDEA violation, the plaintiff must satisfy a 4-part test, proving by a preponderance of the evidence that: (1) the school violated one or more specific provisions of the IDEA, (2) exceptional circumstances exist, such that the conduct of the school was persistently egregious and prevented or frustrated equitable relief under the IDEA, (3) the school has a custom or practice that is the moving force behind the IDEA violations, and (4) the normal IDEA remedies will not adequately compensate the plaintiff. Individuals with Disabilities Education Act, § 601(d)(1)(A), 20 U.S.C.A. § 1400(d)(1)(A); 42 U.S.C.A. § 1983.

**[10] Civil Rights 78 ☞1395(2)**

78 Civil Rights
78III Federal Remedies in General
78k1392 Pleading
78k1395 Particular Causes of Action
78k1395(2) k. Education. Most Cited Cases

**Schools 345 ☞155.5(5)**

345 Schools
345II Public Schools
345II(L) Pupils
345k155.5 Handicapped Children, Proceedings to Enforce Rights
345k155.5(5) k. Judgment and Relief; Damages, Injunction, and Costs. Most Cited Cases
Although disabled student alleged facts showing that charter school and school district violated one or more specific provisions of IDEA, student failed to allege facts sufficient for § 1983 compensatory damages claim for violation of IDEA, by demonstrating that exceptional circumstances rendered conduct of school and school district persistently egregious and by sketching custom or practice that provided moving force behind IDEA violations, and student did not explain why normal IDEA remedies would not offer adequate compensation. Individuals with Disabilities Education Act, § 601(d)(1)(A), 20 U.S.C.A. § 1400(d)(1)(A); 42 U.S.C.A. § 1983.

**[11] Federal Civil Procedure 170A ☞1829**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1827 Determination
170Ak1829 k. Construction of Pleadings. Most Cited Cases
Due to relaxed pleading standards at procedural stage on motion to dismiss for failure to state claim, the district court will not hold the plaintiff's artlessness against her, but, the court's grace does not extend beyond construing implicit allegations to inferring non-existent facts. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[12] Civil Rights 78 ☞1033(1)**

78 Civil Rights
78I Rights Protected and Discrimination Prohibited in General
78k1030 Acts or Conduct Causing Deprivation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
**(Cite as: 524 F.Supp.2d 35)**

Page 4

78k1033 Discrimination in General
78k1033(1) k. In General. Most Cited Cases
Either bad faith or gross misjudgment must be shown before a Rehabilitation Act violation can be made out showing that a plaintiff was discriminated against solely by reason of her handicap. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794.

**[13] Schools 345 ⊗═155.5(2.1)**

345 Schools
   345II Public Schools
      345II(L) Pupils
         345k155.5 Handicapped Children, Proceedings to Enforce Rights
           345k155.5(2) Judicial Review or Intervention
            345k155.5(2.1) k. In General. Most Cited Cases
Disabled student would be granted leave to amend complaint to clarify claim that she was discriminated against solely by reason of her handicap, in violation of Rehabilitation Act, by alleged gross misjudgment or bad faith of charter school and school district in placing her in school with no capacity to deliver special services, after conducting individualized education program (IEP) and assessing student as needing full-time special services; complaint was not clear as to whether school in which student was placed offered no special education services at all, or whether she was negligently misplaced into general education classes in school that had potential to fulfill her special needs. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794.

**[14] Civil Rights 78 ⊗═1033(1)**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1030 Acts or Conduct Causing Deprivation
         78k1033 Discrimination in General
           78k1033(1) k. In General. Most Cited Cases

A theory of negligence will not form the basis of a Rehabilitation Act claim that a plaintiff was discriminated against solely by reason of her handicap. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794.

**[15] Federal Civil Procedure 170A ⊗═1838**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
           170Ak1837 Effect
            170Ak1838 k. Pleading Over. Most Cited Cases
While a district court must, for the purposes of a motion to dismiss for failure to state claim, accept the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor, when a claim is so ambiguous as to leave its viability in doubt, the appropriate action is to grant leave to amend for clarity. Fed.Rules Civ.Proc.Rules 12(b)(6), 15, 28 U.S.C.A.

**\*37** Jude Chinedu Iweanoge, The Iweanoges' Firm, P.C., Washington, DC, for Plaintiffs.

Amy Caspari, Office of the Attorney General, Washington, DC, for Defendant Government of District of Columbia.

*MEMORANDUM OPINION*

**GRANTING THE DEFENDANTS' MOTION TO DISMISS; GRANTING THE PLAINTIFF LEAVE TO AMEND HER COMPLAINT**

RICARDO M. URBINA, District Judge.

**I. INTRODUCTION**

The plaintiff appeals an administrative decision dismissing her complaint against SEED Public Charter School ("SEED") and the District of Columbia Public Schools ("DCPS") alleging that the defendants denied her daughter, a 16-year-old disabled child, a free, appropriate education as required by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
(Cite as: 524 F.Supp.2d 35)

Page 5

the Individuals with Disabilities in Education Act ("IDEA"). The defendants move to dismiss, arguing that the plaintiff fails to adduce facts sufficient in her complaint to support her invocation of § 1983 of the Civil Rights Act and § 504 of the Rehabilitation Act. The plaintiff argues that her claims survive under the relaxed pleading standard assumed during the preliminary stages of a case. Because the plaintiff fails to allege a sufficient factual predicate for her § 1983*38 claim, the court dismisses it. But because the plaintiff fails only to clearly indicate the factual basis of the violation supporting her § 504 claim, the court grants the plaintiff leave to amend her complaint to clarify her factual allegations.

## II. FACTUAL & PROCEDURAL BACK-GROUND

The plaintiff's daughter, B.R., attended SEED from the seventh through the ninth grades. Pl.'s Compl. ¶ 6. Her initial Individualized Education Program ("IEP"), completed on May 3, 2005, required 6 hours of special education services. *Id.* ¶ 8. Her IEP was revised on December 8, 2005, however, to reflect her eligibility for full-time special education. *Id.* ¶ 9. On January 26, 2006, DCPS placed B.R. at Hart Middle School, which allegedly did not provide her any special education services. *Id.* ¶ 10. At the end of the school term, DCPS did not convene a placement meeting to consider an appropriate school for the 2006-2007 term. *Id.* ¶ 11. On August 1, 2006, the plaintiff submitted a letter to DCPS informing it that it had 10 days to designate an appropriate educational setting for her daughter. *Id.* ¶ 12.[FN1] DCPS did not respond, and the plaintiff placed B.R. at High Road School, a private establishment. *Id.*

> FN1. The complaint mislabels paragraph 12 as paragraph 8 and propagates this error throughout the remainder of the document. The court, therefore, ignores the plaintiff's numbering and refers to the paragraphs based on their proper ordination.

[1] On September 29, 2006, the plaintiff filed an administrative complaint against SEED and DCPS alleging a failure to provide B.R. with appropriate education services. *Id.* ¶ 13. On December 7, 2006, a hearing officer ruled that the plaintiff had waived her right to file a claim against SEED because she had withdrawn SEED as a named plaintiff in a prior complaint. *Id.* ¶ 15. The officer also dismissed the claim against DCPS. *Id.* The plaintiff filed a complaint in this court on March 7, 2007, within the 90-day statute of limitation period.[FN2] The defendants' instant motion presents the court with the question of whether the plaintiff has alleged facts in support of her § 1983 and § 504 claims sufficient to ward off dismissal for failure to state a claim.

> FN2. The defendants initially sought dismissal for failure to abide by the statute of limitations, noting that it appeared the plaintiff had not filed a complaint until March 22, 2007. Defs.' Mot. to Dismiss at 4. The plaintiff then explained that her counsel filed the complaint on March 7, 2007 but the clerk's office returned it because of the absence of a signature. Pl.'s Opp'n at 5. Apprised of the context of the delay, the defendants withdrew their statute of limitations defense. Defs.' Reply at 2. The court recognizes that a technical violation such as the absence of a signature does not eliminate subject-matter jurisdiction. *See Tyler v. District of Columbia,* 2006 WL 2024377, at *1 n. 1 (D.D.C. July 18, 2006) (holding that "a complaint is deemed to be filed with the Clerk when it is placed in the Clerk's custody, even if it is technically deficient") (citing *Lyons v. Goodson,* 787 F.2d 411, 412 (8th Cir.1986); *Loya v. Desert Sands Unified Sch. Dist.,* 721 F.2d 279, 281 (9th Cir.1983); *Moffitt v. United States,* 430 F.Supp. 34, 36 (E.D.Tenn.1976)).

## III. ANALYSIS

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
(Cite as: 524 F.Supp.2d 35)

### A. Legal Standard for Motion to Dismiss for Failure to State A Claim

[2][3] A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *39Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir.2003) (citing FED.R.CIV.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47-48, 78 S.Ct. 99 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a legal theory,"*Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000) (internal quotation marks and citation omitted).

[4][5][6] Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly,* --- U.S. ----, ----, ----, 127 S.Ct. 1955, 1967, 1969, 167 L.Ed.2d 929 (2007) (abrogating the oft-quoted language from *Conley,* 355 U.S. at 45-46, 78 S.Ct. 99, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [ ] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w]' that the pleader is entitled to relief,' " a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations-including mixed questions of law and fact-as true and draw all reason-

able inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C.Cir.2003); *Browning,* 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren,* 353 F.3d at 39; *Browning,* 292 F.3d at 242.

### B. The § 1983 Claim Is Dismissed Because the Plaintiff Fails to Plead a Factual Basis

The IDEA guarantees every disabled student a free, appropriate public education specially designed to meet his or her unique needs. 20 U.S.C. § 1400(d)(1)(A). The Act establishes a variety of entitlements and procedural safeguards, including the design and implementation of an IEP for every disabled child, 20 U.S.C. §§ 1401(11), 1414(d), and a notice-and-hearing process by which parents and children participate in the design and implementation of IEPs. *Id.* §§ 1414(f), 1415.

[7] A student is entitled to compensatory education if a school system has failed to provide her special education services. *See Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 407 (6th Cir.1991); *Miener v. Missouri,* 800 F.2d 749, 753 (8th Cir.1986); *Walker v. District of Columbia,* 157 F.Supp.2d 11, 30 (D.D.C.2001). Compensatory damages, however, are not available under the IDEA, and a plaintiff seeking them must bring a § 1983 claim to vindicate her rights under the IDEA. *Walker v. District of Columbia,* 969 F.Supp. 794, 795-97 (D.D.C.1997); *see W.B. v. Matula,* 67 F.3d 484, 494-95 (3d Cir.1995).

[8][9] In full, § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
(Cite as: 524 F.Supp.2d 35)

Page 7

the United*40 States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. It is the plaintiff's burden to establish that a municipality has a custom or practice abridging her constitutional or statutory rights. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C.Cir.2000). To establish liability under § 1983 for an IDEA violation, the plaintiff must satisfy a 4-part test, proving by a preponderance of the evidence that: (1) DCPS violated "one or more specific provisions of the IDEA"; (2) "exceptional circumstances exist, such that the conduct of DCPS ... was persistently egregious and prevented or frustrated ... equitable relief under the IDEA"; (3) D.C. has a custom or practice that is the "moving force behind the IDEA violations"; and (4) the normal IDEA remedies will not adequately compensate the plaintiff. *Walker,* 157 F.Supp.2d at 30; *see also Bowman v. District of Columbia,* 2006 WL 2221703, at *2-3 (D.D.C. Aug.2, 2006); *Savoy-Kelly v. Eastern High Sch.,* 2006 WL 1000346, at *4-5 (D.D.C. Apr.14, 2006); *Jackson v. District of Columbia,* Civ. No. 02-0968, Mem. Op. at 8-9 (D.D.C. Sept. 21, 2003); *R.S. v. District of Columbia,* 292 F.Supp.2d 23, 28-29 (D.D.C.2003). Some district court decisions consider only the first and third factors of this test. *E.g., Johnson v. District of Columbia,* 190 F.Supp.2d 34, 46-47 (D.D.C.2002); *Zearley v. Ackerman,* 116 F.Supp.2d 109, 114 (D.D.C.2000).

The defendants argue that the plaintiff has failed to allege specific facts that would satisfy this 4-part test. Defs.' Mot. to Dismiss at 6. The plaintiff counters that it "is far too early" for the court to expect the plaintiff "to name a specific policy or custom" that she challenges. Pl.'s Opp'n at 6. At this stage, a general allegation of "deliberate indifference" should satisfy the court. *Id.* at 7 (quoting *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996)).

[10][11] As an initial matter, the court observes that the plaintiff has not even explicitly alleged "deliberate indifference" on the part of the defendants in her complaint. The factual narrative therein could be read as implicitly levying such a charge, however. *See Atchinson,* 73 F.3d at 422 (holding that an allegation of a policy or custom could be inferred from allegation of an injury that "reasonably suggest[s] misconduct"). The complaint alleges that B.R. exhibited inappropriate behavior and earned poor grades for two years before DCPS completed a proper IEP. Compl. ¶ 7. And it accuses DCPS of placing B.R. in a school that did not provide full-time special services, despite the language in her IEP allegedly requiring such services. *Id.* ¶ 10. Therefore, in recognition of the relaxed pleading standards at this procedural stage, the court will not hold the plaintiff's artlessness against her. *See Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (admonishing courts not to treat pleading as "a game of skill in which one misstep by counsel may be decisive to the outcome").

*41 Of course, the court's grace does not extend beyond construing implicit allegations to inferring non-existent facts. *Cf. Ramirez v. Arlequin,* 447 F.3d 19, 25 (1st Cir.2006) (holding that "[a] claim of breach of contract by a state actor without any indication or allegation that the state would refuse to remedy the plaintiffs' grievance should have demonstrate a breach of contract under state law does not state a claim for violation of the plaintiffs' right of procedural due process"). The plaintiff has alleged facts showing that the defendants violated

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
(Cite as: 524 F.Supp.2d 35)

Page 8

"one or more specific provisions of the IDEA," but she has not alleged facts demonstrating that "exceptional circumstances" rendered the defendants' conduct "persistently egregious" as required by § 1983. *Cf. Matula,* 67 F.3d at 487-95 (permitting § 1983 action for damages where school system persistently refused to evaluate, classify and provide necessary educational services to plaintiff despite "ample reliable evidence" of plaintiff's disability); *Quackenbush v. Johnson City Sch. Dist.,* 716 F.2d 141, 147-49 (2d Cir.1983) (permitting § 1983 action for damages where school system purposefully took steps to "prevent[ ] handicapped children from gaining access to the procedural safeguards guaranteed by the statute"). Nor has the plaintiff alleged facts sketching a custom or practice of the defendants providing the "moving force behind the IDEA violations." *Cf. Atchinson,* 73 F.3d at 422 (upholding § 1983 claim because it contained specific allegation-failure to train police officers in proper use of force-that notified defendant of precise custom or policy alleged to be legally deficient). And, finally, the plaintiff has not explained in either pleadings or briefs why the normal IDEA remedies would not offer adequate compensation. *See Matula,* 67 F.3d at 495 (advising that "on fashioning a remedy for an IDEA violation, a district court may wish to order educational services, such as compensatory education beyond a child's age of eligibility ... rather than compensatory damages for generalized pain and suffering"). Indeed, it is not even clear from the complaint that the plaintiff is seeking compensatory damages, at all. *See* Compl. at 7 (praying for injunctive relief, compensatory education, attorneys' fees and costs of this action). Because no facts show any signs of life in the plaintiff's claim, the court dismisses it as legally moribund.

### C. The § 504 Claim Is Dismissed Because Its Factual Basis Requires Clarification

[12] In order to state a claim under § 504 of the Rehabilitation Act, a plaintiff must show that he or she was discriminated against "solely by reason of his

[or her] handicap." 29 U.S.C. § 794. In the context of children who receive benefits pursuant to the IDEA, the D.C. Circuit has noted that "to show a violation of the Rehabilitation Act, something more than a mere failure to provide the 'free and appropriate education' required by the [IDEA] must be shown." *Lunceford v. D.C. Bd. of Educ.,* 745 F.2d 1577, 1580 (D.C.Cir.1984) (quoting *Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982)). "[E]ither bad faith or gross misjudgment must be shown before a Section 504 violation can be made out." *Monahan,* 687 F.2d at 1170-71 (holding that liability will not be imposed as long as the "state officials have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals"); *cf. Timms v. Metro. Sch. Dist. of Wabash County,* 722 F.2d 1310, 1317-18 & n. 4 (7th Cir.1983) (noting that § 504 may not require a showing of intentional discrimination).

[13][14] The defendants argue that the § 504 claim cannot survive because the plaintiff's complaint "makes no mention of either bad faith or gross misjudgment." **\*42** Defs.' Mot. at 7. The plaintiff counters that the complaint does allege bad faith or gross misjudgment, and refers the court to the fact that the defendants continued a special-needs child, after two years of poor grades and unruly behavior, in an educational setting with no special needs programs. Pl.'s Opp'n at 7. In so far as the plaintiff is arguing that her daughter's behavior and grades should have alerted the defendants to her special needs, the plaintiff is propounding a theory of negligence, which will not form the basis of a § 504 claim. *T.T. v. District of Columbia,* 2007 WL 2111032, at \*10, 2007 U.S. Dist. Lexis 52547, at \*30 (D.D.C. July 23, 2007) (citing *Sellers by Sellers v. Sch. Bd. of City of Manassas, Va.,* 141 F.3d 524, 529 (4th Cir.1998)).

But the plaintiff also argues that "it was a gross misjudgment and bad faith for the school system to place the student in a school that they knew could not implement an IEP which called for a full time

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

524 F.Supp.2d 35
524 F.Supp.2d 35, 228 Ed. Law Rep. 216
**(Cite as: 524 F.Supp.2d 35)**

Emotionally Disturbed placement." Pl.'s Opp'n at 7. If this is so-that is to say, if the defendants conducted an IEP, assessed the plaintiff's child as needing full-time special services, and then placed her in a facility with no capacity to deliver special services-then the court would encounter no difficulty in characterizing such conduct as marked by gross misjudgment or bad faith. *See Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (footnotes omitted) (holding that a "decision, if made by a professional, is presumptively valid, [and] liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment"). However, it is not clear from the complaint whether Hart Middle School offered no special education services at all when the defendants placed B.R. there, or whether B.R. was negligently misplaced into general education classes in a school that had the potential to fulfill her special needs. *See* Compl. 10 ¶ (alleging that DCPS placed B.R. at Hart Middle School where she "was not receiving any special education services").

[15] While a court must, for the purposes of a motion to dismiss, accept the complaint's factual allegations "as true and draw all reasonable inferences therefrom in the plaintiff's favor,"*Macharia,* 334 F.3d at 67, when a claim is so ambiguous as to leave its viability in doubt, the appropriate action is to grant leave to amend for clarity. *Richards v. U.S. Merit Systems Protection Bd.,* 739 F.Supp. 657, 657 n. 2 (D.D.C.1990); FED. R. CIV. P. 15. Because the court concludes that, as presently pleaded, the plaintiff's § 504 claim can demonstrate at most negligence, it dismisses the claim but grants the plaintiff leave to amend her complaint within 60 calendar days of the issuance of this ruling to allege facts demonstrating that the defendants' actions constituted gross misjudgment or bad faith. *See Iacampo v. Hasbro, Inc.,* 929 F.Supp. 562, 571 (D.R.I.1996) (noting the propriety of issuing an in-

terlocutory order of dismissal while granting leave to amend) (citing *Cash Energy, Inc. v. Weiner,* 768 F.Supp. 892, 897 (D.Mass.1991)).

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss as to the § 1983 claim and grants the plaintiff leave to amend her § 504 claim. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of December, 2007.

D.D.C.,2007.
B.R. ex rel. Rempson v. District of Columbia
524 F.Supp.2d 35, 228 Ed. Law Rep. 216

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX E

**Mandatory reporting.**

(a) All hospitals, clinics, sanitariums, doctors, physicians, surgeons, medical examiners, coroners, dentists, osteopaths, optometrists, chiropractors, podiatrists, nurses, school teachers and officials, peace officers, law enforcement officials, pharmacists, social workers, day care workers or employees, mental health professionals, members of the clergy as defined in Rule 505 of the Alabama Rules of Evidence, or any other person called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority.

(b) When an initial report is made to a law enforcement official, the official subsequently shall inform the Department of Human Resources of the report so that the department can carry out its responsibility to provide protective services when deemed appropriate to the respective child or children.

(c) When the Department of Human Resources receives initial reports of suspected abuse or neglect involving discipline or corporal punishment committed in a public or private school or suspected abuse or neglect in a state-operated child residential facility, the Department of Human Resources shall transmit a copy of school reports to the law enforcement agency and residential facility reports to the law enforcement agency and the operating state agency which shall conduct the investigation. When the investigation is completed, a written report of the completed investigation shall contain the information required by the state Department of Human Resources which shall be submitted by the law enforcement agency or the state agency to the county department of human resources for entry into the state's central registry.

(d) Nothing in this chapter shall preclude interagency agreements between departments of human resources, law enforcement, and other state agencies on procedures for investigating reports of suspected child abuse and neglect to provide for departments of human resources to assist law enforcement and other state agencies in these investigations.

(e) Any provision of this section to the contrary notwithstanding, if any agency or authority investigates any report pursuant to this section and the report does not result in a conviction, the agency or authority shall expunge any record of the information or report and any data developed from the record.

(f) Subsection (a) to the contrary notwithstanding, a member of the clergy shall not be required to report information gained solely in a confidential communication privileged pursuant to Rule 505 of the Alabama Rules of Evidence which communication shall continue to be privileged as provided by law.

*Acts 1965, No. 563, p. 1049, §1; Acts 1967, No. 725, p. 1560; Acts 1975, No. 1124, p. 2213, §1; Acts 1993, 1st Ex. Sess., No. 93-890, p. 162, §3; Act 2003-272, p. 645, §1.)*